Marvin G. STACKS, Petitioner,

v.

EAST DALLAS CLINIC et al., Respondents.

No. A–11267.

Supreme Court of Texas.

Nov. 2, 1966.

Rehearing Denied Jan. 18, 1967.

Fritz, Vinson & Turley, Dallas, for petitioner.

Abney & Burleson, Ernest Conner, Dallas, for respondents.

GREENHILL, Justice.

This is an action in which Marvin G. Stacks seeks to recover double the amount of usurious interest paid by him to the defendants, East Dallas Clinic, C. N. Duncan, M.D., R. D. Mahon, M.D., Walter H. Patton, M.D., William T. Green, M.D., and East Dallas Hospital, Inc., under article 5073.[1] The determination of the case necessarily requires a construction of that statute. Article 1728 § 3. Trial was to a jury in county court where the court instructed a verdict in Stack's favor. Judgment was

entered for plaintiff in the amount of $305.10. The Court of Civil Appeals sitting at Tyler reversed and remanded. 397 S.W. 2d 558.

The question presented for decision here is whether the defendants received a benefit from the usurious interest paid to them by Stacks and which they in turn paid to a third person. We hold they did not.

The suit was instituted by Stacks against East Dallas Clinic, a partnership of physicians above named and East Dallas Hospital, Inc., a corporation that owns the hospital used by these physicians. Since these two organizations operated in effect as one entity, they will be hereinafter referred to as the Clinic. Stack's wife had an operation at the East Dallas Hospital in February of 1961, and her physician was from the East Dallas Clinic. The total bill was $652.90. Stacks signed two notes payable to the Republic National Bank, one for $325.00, due the Clinic for the doctor's bill, and the other for $327.90, due the Hospital for hospital charges. Benson, the Clinic's credit manager, told Stacks that the monthly payments on the two notes would be $54.41 for twelve months, and these were to be deposited with the bank. Twelve times $54.41 equals $652.92—within two cents of the amount owed.

At the same time Stacks signed the two notes, he also filled out and signed two applications for credit addressed to W. H. (Joe) Bailey and the Dallas Retail Credit Managers Association. Bailey was the auditor of the Association and had no connection whatsoever with the Clinic except as set out below. The Dallas Retail Credit Managers Association had worked out a plan with the Republic National Bank to enable debtors of various Dallas businesses to pay their bills. The debtor would apply to Bailey, otherwise known as the Dallas Retail Credit Managers Association, for a loan in the amount of the debt. At the same time, the debtor would sign a note

1. Tex.Rev.Civ.Stat.Ann. art. 5073 (1962).
All references to statutes herein are to

Vernon's Annotated Revised Texas Civil Statutes.

payable to the Republic National Bank which would be endorsed by the creditor to the extent of the amount due him. The application form and note were forwarded to Bailey, who checked them, and forwarded them to the bank. The bank would pay the amount of the note (debt) to the creditor, and then collect monthly payments from the debtor. Bailey paid the bank five percent interest on the notes.

Stacks and his wife made out separate checks, one to the East Dallas Clinic for $32.50, and the other to the East Dallas Hospital for $32.79. Benson, the Clinic's credit manager, told the Stackses that these checks were for interest. The interest equalled ten percent of the total amount due, but we shall assume that it was usurious because it did not take into account the monthly payments which would reduce the balance of the principal. The Clinic deposited the two interest checks to its account. The Clinic then wrote Bailey two checks of its own for $32.50 and $32.79, which were forwarded to him by the Clinic together with the two notes and applications. The Clinic retained none of this "interest." Bailey sent the notes to the bank, which forwarded cashier's checks in the amount of $325.00 and $327.90, respectively, to the Clinic.

Stacks made two monthly payments of $54.41 to the bank. Thereafter the payments proved to be too large for Stacks to handle; so he asked Benson to reduce the monthly payments. Benson called Bailey to ask him if the payment could be reduced and extended, and if so, what the charge would be for doing this. The balance of the two notes was consolidated into one note for $544.10, and a renewal and interest charge of $81.61 made. Stacks wrote a check payable to the Clinic for $81.61 and gave it to Benson. This check was deposited in the Clinic's bank account. The Clinic sent its own check to Bailey for the $81.61.

■ The Clinic took up the two original notes on which they were shown to be endorsers, and made payment to the bank for the balance owed thereon. The new note for $544.10, together with the $81.61, was sent to Bailey, who forwarded the note to the bank as before. The bank promptly remitted $544.12 to the Clinic. Stacks made regular payments on the consolidated note until June 8, 1962, when he again fell behind. The bank then sent the note back to the Clinic, and charged it with the balance of $362.74. Stacks made two additional payments totaling $45.34 to the bank after June 8. The bank credited the Clinic's account with only $39.69 of this, however, retaining $5.65 as a "late collection" charge. The Clinic turned the note over to a Dallas collection agency which collected the balance from Stacks. This suit was then filed by Stacks to recover the alleged usurious interest.

Article 5073 reads in part:

"Within two years after the time that a greater rate of interest than ten per cent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation *receiving* the same. * * *" [2] [Emphasis added.]

"Receiving" as used in the statute means "benefiting" from the interest paid. Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942 (1935); Deming Inv. Co. v. Giddens, 41 S.W.2d 260 (Tex.Civ.App.1931, writ dism'd). These cases are controlling here.

■ This Court noted in the *Best* case, cited just above, that a cause of action to recover double the amount of interest paid is derived from a statute creating a penalty. It is not a suit in tort. Since the statute is one involving penalties, this Court in that case said that the statute would be

2. The statute was amended in 1963 in ways not considered material to this case. Acts 1963, 58th Leg., p. 550, ch. 205, § 28.

strictly construed and that "the language of the statute is not to be given a mere literal construction." In the *Best* case, the original lender did collect the interest and forwarded it to the then holder of the indebtedness. In that sense, as here, it "received" the interest. This Court, speaking through Judge Smedley, stated, "This statute was intended to penalize one who exacts and receives the benefit of usury, not every one who may be connected with its collection." 80 S.W.2d at 947.

While the *Best* and *Giddens* cases dealt with the receipt of interest by a transferor (payee) for value of the notes in question and remittance of this interest to his transferee, the principle stated is applicable to this case. The Clinic *received* the interest from Stacks, and promptly remitted payment in an equal amount to Bailey. The Clinic did not lend Stacks any money. The only benefit the Clinic received was the collection of its account from Stacks. A "benefit" from the interest refers to a direct benefit from the receipt and retention of the interest itself, and not to something so incidental as the collection of an account receivable, admitted due, as in this case.

This Court will look through the form to the substance of a transaction; and the substance here bears out defendant's contention that it only collected the interest for another, and received no benefit from such interest itself.

Stacks next contends that in a usury case, payments are allocated to principal first and interest last; therefore, the last payments made by Stacks to the collection agency and by the agency to the Clinic should be regarded as the actual interest payments. This rule has no application to our case. Here, the advance payments made by Stacks to the Clinic were for interest. The Clinic told Stacks that the payments would not apply to reduce the principal of the notes. Likewise, Mrs. Stacks testified that she knew the first two ad-

vance payments were for interest. Where the parties designate a payment as interest, then interest it will be. Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (1935); Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204 (1902); Hamilton v. Bill, 90 S.W. 2d 929 (Tex.Civ.App.1936, writ ref'd).

Further, Stacks contends that, even if the "benefit" interpretation of article 5073 prevents a double recovery from the Clinic, the Court of Civil Appeals erred in not allowing a recovery for the single amount of the interest paid to the Clinic. We overrule this contention.

Nowhere in his pleadings does Stacks assert a cause of action for recovery of the single amount of usurious interest alone. He bases his entire cause of action on a double recovery under article 5073; and under these circumstances, a recovery for the single amount of interest paid will not be allowed, notwithstanding a prayer for general relief. Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (1935); Jennings v. Texas Farm Mortg. Co., 124 Tex. 593, 80 S.W.2d 931 (1935).

Finally we come to the question of what judgment should be entered by this Court. The trial court instructed a verdict for Stacks. The Court of Civil Appeals found error. It was of the opinion that Stacks was not entitled to recover under Deming Inv. Co. v. Giddens, and Commerce Trust Co. v. Best, discussed above. Ordinarily this would result in the reversal and rendition of the judgment by the Court of Civil Appeals. Without any explanation, however, that court reversed and remanded the cause for a new trial. The Clinic et al. filed no application for writ of error. That being so, there can be no rendition in its favor. Henderson v. Gunter, 160 Tex. 267, 328 S.W.2d 868 (1959). The judgment of the Court of Civil Appeals is, therefore, affirmed.

SMITH, NORVELL, STEAKLEY and POPE, JJ., dissenting.

NORVELL, Justice (dissenting).

This case involves a construction of Article 5073, Vernon's Ann.Tex.Stats. The petitioner, Marvin G. Stacks, owed bills totaling $652.90 to East Dallas Hospital and East Dallas Clinic. He managed to discharge this indebtedness in a series of transactions involving the hospital, the clinic, the Republic National Bank and one W. H. (Joe) Bailey, a "go between" in the various negotiations and agreements of the parties. All this is set out in the court's opinion. In addition to the principal of the debt, Stacks has paid over money in excess of ten per cent per annum of the principal. This excess amounted to $152.55 and the trial court rendered judgment for double that amount, namely, $305.10. Among the numerous papers and documents executed by Stacks there was a request that Joe Bailey arrange a loan for him, but Stacks did not agree to pay Bailey a sum certain in money for services to be rendered in securing a loan. He testified that he did not know that Bailey "had anything to do with the money part" of the transactions. However, Mr. Benson representing the clinic and the hospital testified that he collected a "charge" in connection with the obtaining of a loan for Stacks, the proceeds of which were used to pay the hospital and clinic bills owed by Stacks. Stacks gave Benson checks for $32.50 and $32.79, payable to clinic and hospital respectively, and later, Stacks paid another "charge" of $81.61 in connection with a loan renewal negotiation.

The court holds that the respondent clinic and hospital cannot be held liable under Article 5073 because shortly after receiving the money called for by these checks, they paid the same over to Joe Bailey. This holding is primarily based upon Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942 (1935).

Article 5073 says that: "[T]he person paying the same [interest at greater rate than ten per cent] or his legal representative may by an action of debt recover double the amount of such interest from the person, firm, or corporation receiving the same".

Here the evidence is undisputed that the clinic and hospital *received* the items of $32.50, $32.79 and $81.61 above mentioned. However in *Best*, this court refused to give the statute its literal meaning. From the report of the case, it appears that while Commerce Trust Co. had received interest payments from Best, it had accepted the same on behalf of California State Life Insurance, the holder of the note which was the basis of the usury claim. The court rejected the theory that Commerce Trust Company was a joint tort-feasor with its principal, California State Life Insurance Company, and held that where the principal holds a usurious obligation, an agent or employee of the principal is not liable for payments received by him as agent and thereafter transmitted to his principal.

This court said:

"It is true that plaintiff in error received these interest payments in the sense that they came into its hands and passed from them when it transmitted them to its principal, but the language of the statute is not to be given a mere literal construction. If it were, then any employee of a corporation who accepted and deposited to the credit of the corporation money paid in settlement of usurious interest notes belonging to it would be personally liable for double the amount of the interest so collected."

Deming Investment Company v. Giddens, 41 S.W.2d 260 (Tex.Civ.App.1931, writ dism'd) was referred to in *Best*. Deming Investment Company had transferred a usurious note to Rutland Trust Co. and thereafter received and transmitted certain interest payments received by it to Rutland. Here, Deming was obviously acting for and on behalf of Rutland and the holding of the Court of Civil Appeals is in accord with the later holding of this court in *Best*.

When the court attempts to apply the principle of the Best and Giddens cases to the one now before us, some difficulty is encountered. The rule of the Best case is a narrow one, namely, that one acting merely as an agent in collecting interest on a usurious note and forwarding the same to the holder of the note is not liable under the penalty prescribed in Article 5073. The rule stated has no application to this case. The hospital and clinic collected the $32.50, $32.79 and $81.61 items, totaling $146.90, and turned the same over to Joe Bailey. Stacks had never agreed to pay Bailey anything. I can find no contractual basis which would authorize the hospital and clinic to pay over Stacks' money to Bailey.

To support the court's judgment in this case, the rule in *Best* must be extended to apply to any transaction wherein one collects money from a debtor and turns it over to some person to whom the debtor is in no way legally obligated, thus ridding himself of the taint of "benefit" from the transaction.

When we look to substance, this is what happened: Stacks went along with a well designed plan whereby he could obtain a loan, discharge his hospital and clinic bills, but at a cost to him of more than ten per cent per annum. In order to accomplish this, Joe Bailey as a "go between" was employed. He may be a legitimate loan broker but strange to say, no one in this lawsuit pleaded that he was or that the money paid to him was a legitimate brokerage charge, and certainly Stacks did not agree to pay him $146.90 for brokerage services. He thought these advance charges ultimately paid over to Bailey were interest charges. It seems that the East Dallas Clinic may have been under a similar impression as it transmitted the $32.50 to Joe Bailey by means of a check signed by Benson which bore the notation, "Note Interest, Marvin G. Stacks $32.50". Mr. Benson spoke of the items which were paid to Bailey as interest charges. There is no basis in the present record for saying that the money paid to Bailey was for services rendered to Stacks. When this fact is accepted, and respondents do not dispute it, there is no escape from the conclusion that Mr. Stacks has paid more than the statutory limit for the use of money.

The plan of financing adopted in this case was the result of a three way agreement between the hospital and clinic, the bank and Joe Bailey. It appears that Bailey received money as interest, that the bank received money as interest and that the hospital and clinic received payment for the bills owed by Stacks. In the process, Stacks paid some 19% per annum for the money he obtained to discharge his bills. From a creditor's standpoint there is a difference between an unpaid bill and one that is paid. By joining with the bank and Bailey, the hospital and clinic certainly received a "benefit", that is, an advantage or profit. The fact that the payments made (other than those applicable to the principal of the debt) went to more than one person or entity should not obscure the situation. Too much was here paid for the use of money.

I fear that the decision of the court in this case will provide in effect an unfortunate breach in our anti-usury laws. Much time and ingenuity has been expended in attempts to circumvent these statutes, and we need to be ever alert to this situation. If a borrower is to employ and pay a person in connection with the securing of a loan, he is entitled to know about it. He should also be entitled to know the rate of interest he is required to pay.

I respectfully dissent. I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

SMITH, STEAKLEY and POPE, JJ., join in this dissent.