**Dan J. RHEINER, d/b/a D. J. Rheiner Construction Company, et al., Appellants,**

**v.**

**Hugh VARNER, et al., Appellees.**

**No. 1403.**

Court of Appeals of Texas, Tyler.

Nov. 30, 1981.

Rehearing Denied Feb. 4, 1982.

Richard Hayes, Harry J. Burns, Richard P. Corrigan, Ronald Hornberger, San Antonio, for appellants.

J. Michael English, Larry Murphree, San Marcos, Jonathan Yedor, San Antonio, Charles E. Blackley, New Braunfels, Keith O'Gorman, San Antonio, for appellees.

SUMMERS, Chief Justice.

The genesis of this lawsuit was the construction of a shopping center in Hays County, Texas. The owners of the center, W. C. Carson, Ronald O. Wilson, Frank Corte, and their corporation, San Marcos North Diversified, Inc., entered into a construction contract with Dan J. Rheiner, d/b/a D. J. Rheiner Construction Co. (general contractor). The general contractor entered into subcontracts with Hugh Varner (Varner) for the underground utility work and with Marshall Construction Co. (Marshall) for site work and asphalt paving.

After completion of that phase of the project involving those subcontractors named above, Varner instituted suit against the general contractor for $12,300, representing the balance due under his contract, and for $14,100 as payment for "extras" to the contract. The general contractor impleaded the owners claiming that Varner's extra work was authorized and directed by the owners, and, if Varner recovered from the general contractor for such extras, then the owners were liable to the general contractor for that amount. The owners subsequently counterclaimed against the general contractor and its bonding company, American States Insurance Co., alleging that the work done by subcontractors Varner and Marshall was defective; that the owners were damaged by such defective work in the amount of $71,475; and that the general contractor was liable for such damage. The general contractor then brought a third party action against subcontractor Marshall for an offset in the event the asphalt and site work was found to be defective. The general contractor also counterclaimed against Varner for an offset should Varner's work be found to be defective. Marshall responded to the general contractor's third party action against him with his own claim for extras. Since the owners had heretofore denied that they authorized the two subcontractors to perform any extra work, alleging that the authorization, if any, came from the architect Joseph Hans and was his responsibility, the general contractor brought a third party action against the architect for indemnity. A claim of usury was also asserted against Varner by both the general contractor and the owners. Finally, Varner brought an action against the owners to recover the money owed him in the event the general contractor was found not to be liable.

Against this background, trial was had to the court below without the aid of a jury. The trial court held that subcontractor Varner was entitled to recover $23,105.79, together with attorney's fees and interest from the general contractor and $5,225 plus

interest from the owners. Judgment was entered for subcontractor Marshall that he recover $22,045.53, together with attorney's fees and interest from the general contractor. The owners were given judgment against the general contractor and its bonding company[1] for $42,180 as damages for defective work, together with attorney's fees and interest. The owners were also allowed to collect the $5,225 they owed Varner from the general contractor and its bonding company. A take-nothing judgment was rendered as to all claims asserted against the architect, and all costs were assessed against the general contractor. From this judgment only the general contractor and its bonding company appeal.

We reverse and render in part, modify and, as modified, affirm.

Appellants (hereafter referred to as the general contractor) predicate their appeal on six points of error. The first point attacks the trial court's mathematical computation of the award granted Varner. Specifically, the general contractor claims that the $23,105.79 awarded Varner included $7,000 in attorney's fees, yet the trial court in its judgment awarded Varner another $7,000 for attorney's fees. Varner agrees with the general contractor on this point, and our review of the record convinces us that such an error was made. We sustain point of error one. Accordingly, we order that the judgment against the general contractor as it relates to Varner's claims be reduced to $16,105.79, together with attorney's fees in the amount of $7,000.

In points 2, 3, 5 and 6 the general contractor does *not* attack the awards made by the trial court, but does attack the trial court's judgment pertaining to who should pay the awards. It is significant to point out here that the general contractor admitted in its brief that no attack was being made on the trial court's findings; that there was evidence to support such findings. Apparently, then, the general contractor is claiming on appeal that the findings made by the court below do not support the judgment. The rule is that where the trial court's findings of fact are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case, regardless of whether the trial court gives the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Wirth Ltd. v. Panhandle Pipe and Steel*, 580 S.W.2d 58, 62 (Tex.Civ.App.—Tyler 1979, no writ).

The question for us on appeal is whether the findings of the trial court support the judgment. If they do, then we must affirm; if they do not, we are obligated to reverse the trial court's judgment.

Turning now to the second assignment, the general contractor claims it was error for the trial court to allow the owners to recover, by way of indemnification, from the general contractor for the extras performed by Varner. In other words, Varner was found to have performed services that were not contemplated under the original contract. These extras consisted of (1) boring under a state highway, instead of performing an open cut as the original plans specified, at a cost of $6,000; (2) installing five extra water service lines at a cost of $2,225; and (3) obtaining a permit to bore under a railroad track at a cost of $775, making the total amount of extras $9,000. Of this total amount, the court found that the general contractor was to pay Varner for the railroad permit and one half the cost of boring under the highway. The owners were to pay for the extra water lines and one half of the boring costs. The judgment of the trial court further provided that the owners would be indemnified by the general contractor and its bonding company for the $5,225 paid to Varner. As the general contractor points out, the net result of the trial court's judgment is that the general contractor is liable for all the extras performed by Varner.

---

1. The general contractor and the bonding company entered into a stipulation that whatever judgment was rendered against the bonding company would be assumed by the general contractor.

■ Since there was no privity of contract between the owners and the subcontractor Varner, Varner's award against the owners must have been based on quantum meruit. *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80, 91 (Tex.1976). The necessary elements of recovery under this theory are: (1) valuable services were rendered or materials furnished; (2) for the persons sought to be charged, i.e., the owners; (3) which services and materials were accepted by the owners used and enjoyed by them; (4) under such circumstances as would reasonably notify the owners that the plaintiff, i.e., Varner, in performing such services was expecting to be paid by the owners. *Colbert v. Dallas Joint Stock Land Bank*, 136 Tex. 268, 150 S.W.2d 771, 776 (1941); *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Garza v. Mitchell*, 607 S.W.2d 593, 600 (Tex.Civ.App. —Tyler 1980, no writ).

■ The findings made by the trial court in support of its judgment against the owners were: (1) that Hugh Varner furnished extra water services to the project having a reasonable value to Dan J. Rheiner *and the owners* of Springtown Center in Hays County, Texas, of $2,225 (finding of fact 12); and (2) that Hugh Varner performed a boring operation underneath Bugg Lane having a reasonable value to Dan J. Rheiner *and the owners* of Springtown Center in Hays County, Texas, of $6,000 (finding of fact 13). These findings would supply the first two elements listed above. There are no findings on elements three and four. However, in this case we can apply Rule 299, Tex.R.Civ.P., and supply the omitted unrequested elements. *Anderson Development Corp. v. Coastal States Crude Gathering Co.*, 543 S.W.2d 402, 406 (Tex.Civ.App. —Houston [14th Dist.] 1976, writ ref'd n. r. e.).

Having decided that the findings of the trial court support Varner's judgment against the owners under quantum meruit, we must now determine if there was any basis for awarding the owners judgment against the general contractor for this same

amount. The trial court's conclusions of law indicate that the owners were entitled to be indemnified by the general contractor and its bonding company because the owners had not waived the right to insist upon written change orders from the general contractor. The reasoning seems to be that the right to indemnity accrues to the owner because the general contractor somehow "breached" the covenant of submitting written change orders for Varner's extra work.

■■ We think this reasoning is wrong. First, the clause relating to written change orders is a condition of the contract and not a covenant. Conditions precedent are those acts or events which occur subsequently to the making of a contract and which must occur before there is a right to immediate performance. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). In other words, submitting a written change order to the owners is a condition precedent to the general contractor's right to immediate performance by the owners, i.e., payment for extra work. A breach would occur if the owners refused to pay for the work submitted by the change order. If no written change order is submitted, the owners' duty to pay would never arise. It would not, however, give the owners a cause of action for breach of contract against the general contractor. *See* Dorsaneo, Texas Litigation Guide, § 270.05 (1977).

Moreover, the judgment awarded to Varner against the owners was based on quantum meruit, the root of which is unjust enrichment. *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). If the owners are unjustly enriched unless they are made to pay Varner for his extra work, they are still unjustly enriched if they are indemnified by the general contractor.

The general contractor also complains under his second point of error that the trial court erred when it adjudged that the general contractor was primarily liable for half the cost of the extra boring done by Varner. That is, the trial court first found that

Varner could recover from the owners $5,225. This sum represented $2,225 for five extra water service lines and $3,000 for *half* the cost of the extra boring. As we decided above, the findings support this judgment against the owner on the basis of quantum meruit without any right to indemnification. The remaining $3,000 owing to Varner for the extra boring was assessed against the general contractor directly, of which the general contractor now complains.

The findings of the trial court that would support a judgment against the general contractor for half the cost of the extra boring are the same findings that supported the judgment against the owners. See above. Since the general contractor has not attacked these findings, we are compelled to hold that such findings support the judgment against him on the basis of quantum meruit.

To summarize our holding on the second point of error, we sustain that part of the general contractor's assignment which complains of the granting of indemnification to the owners. We overrule his contention that the trial court erred in awarding Varner judgment for $3,000 against him.

The gist of the third and fifth points of error is that the trial court erred in not allowing the general contractor an offset from the amounts he owed the subcontractors Varner and Marshall. The offsets were not allowed because the trial court found that any failures, i.e., defects, in the performance of the work was the result of improper and inadequate supervision by the general contractor or other causes not attributable to the subcontractors. Moreover, the trial court specifically found that Marshall had performed in a good and workmanlike manner which would in itself preclude an offset. Although a similar finding was not made with regard to Varner's

work, the trial court did find that Varner's work was performed in accordance with the directions of the general contractor and was approved and accepted by him. There was no finding that the work performed by either Varner or Marshall was defective.

The general rule of law concerning offsets is that a subcontractor is entitled to recover the full contract price from the general contractor less the reasonable cost of remedying any defects and omissions so as to make the work conform to the contract. *Graham Construction Co. v. Robert H. Pyle, Inc.*, 422 S.W.2d 485, 487 (Tex. Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). Without a finding that the defects were caused by the subcontractors, there is no basis to grant the general contractor an offset. Points three and five are overruled.

The general contractor asserts under his fourth point that the trial court erred by failing to find that Varner had charged him an usurious rate of interest. This claim of usury arose when Varner subcontracted the boring portion of his contract to Armco Steel Corporation (Armco). When the boring was completed and payment was not made by Varner to Armco, interest of 1½% per month was charged to Varner. Eventually Varner paid the amount he owed Armco which included the interest charge. When Varner sued the general contractor for the amount expended in the boring operation, the Armco interest charge was included as part of Varner's damages. The general contractor claims that this interest charge violated Art. 5069–1.03, Tex.Rev.Civ. Stat.Ann.[2], thereby subjecting the creditor, i.e., Varner, to loss of principal, twice the interest charged and the general contractor's reasonable attorney's fees as provided by Art. 5069–1.06(2).[3]

Appellant's sole authority for his position is *Houston Sash and Door Co., Inc. v. Hean-*

---

2. During the time this suit arose and was tried (prior to the 1979 amendments), Art. 5069–1.03 provided:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum pay-

able, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made.

3. All statutory cites are to Texas Revised Civil Statutes unless otherwise noted.

er, 577 S.W.2d 217 (Tex.1979). That case held that a creditor/seller who charged a debtor/buyer *any* interest on an open account before the first day of January following the sale violated Art. 5069–1.03. That case does not, however, settle the issue in the case at bar. The issue before us is whether or not the original debtor, Varner, violates the usury law when he passes on a third party's usurious interest charge.

▪ Varner cites *Stacks v. East Dallas Clinic*, 409 S.W.2d 842 (Tex.1967) as support for his position that the transaction here in question was not violative of the statutory proscriptions. The court in *Stacks* was interpreting Article 5073 which was repealed and replaced by Article 5069–1.06.[4] The issue in *Stacks* was whether or not the "middleman" (Varner in our case) was the person "receiving" the usurious interest. The court held that, as used in that statute, "receiving" means "benefiting" from the interest paid. Since the middleman did not reap a direct benefit, but only collected the interest and passed it on, he had not received the interest within the meaning of the statute. 409 S.W.2d at 845. Under this authority, we find that Varner did not receive unlawful interest from the general contractor.

▪ The *Stacks* case, however, does not totally answer our problem because the statute has been amended to include a person who not only receives the usurious interest but who also "contracts for" or "charges" such interest.[5] We must decide, then, if Varner was a person who contracted for or charged the general contractor usurious interest.

The general contractor has asserted his usury claim under art. 5069–1.03 which in itself admits that no contract has been made for the charging of interest. *Houston*

*Sash and Door Co., Inc. v. Heaner*, 577 S.W.2d at 221. Likewise, we find that Varner did not "charge" the general contractor interest. The term "charges" as used in the statute means unilaterally placing on an account an amount due as interest. *Hagar v. Williams*, 593 S.W.2d 783, 788 (Tex.Civ. App.—Amarillo 1979, no writ). Armco charged Varner such interest, but Varner did not unilaterally place on the general contractor's account an amount due as interest. Appellant's fourth point is overruled.

The issues presented by the sixth point of error have been disposed of under point two and need not be considered further.

To summarize our holding, we reverse and render that part of the trial court's judgment which granted the owners judgment against the general contractor and bonding company for $5,225.00. That part of the trial court's judgment awarding Varner $23,105.79 plus $7,000 in attorney's fees against the general contractor is modified to $16,105.79 plus $7,000 in attorney's fees. As modified, the remainder of the trial court's judgment is affirmed.

Accordingly, we reverse and render in part, modify in part, and, as modified, affirm.

---

**4.** Article 5073 read in part:

Within two years after the time that a greater rate of interest than ten percent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation *receiving* the same. (Emphasis ours.)

**5.** Article 5069–1.06 reads in part:

(2) Any person who *contracts for, charges* or *receives* interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal.... (Emphasis ours.)