Anuradha Mohan SETH, Appellant,

v.

Mohan Singh SETH, Appellee.

No. 2–84–073–CV.

Court of Appeals of Texas,
Fort Worth.

July 31, 1985.

Miller, Hiersche, Martens & Hayward
and Jerry L. Hiersche, Dallas, for appellant.

Baskin, Novakov & Thomas and Louis H.
Altman, Ross W. Stoddard, Dallas, for appellee.

Before FENDER, C.J., and BURDOCK
and JOE SPURLOCK II (sitting by designation), JJ.

OPINION

FENDER, Chief Justice.

This is a choice of law conflicts case
arising out of divorce proceedings.  Three

main parties are involved: Mohan Seth, (appellee and hereinafter "Husband"); Saroj Seth, (appellee and hereinafter "Wife One"); and Anuradha Mohan Seth, (appellant and hereinafter "Wife Two").

We affirm.

In 1982 Wife Two filed a petition for divorce in Dallas County and named Husband as respondent. Wife One then filed a plea in intervention, alleging that she was the lawful wife of Husband and that Wife Two was never lawfully married to Husband. After the filing of this plea in intervention by Wife One, Wife Two filed an amended petition for divorce. In pertinent part that petition stated:

## III.

The parties were married as Moslems under the Law of Islam in Bombay, India, on or about June 17, 1975, and ceased to live together as husband and wife on or about September 27, 1981. In the alternative, the parties were married as Moslems under the Law of Islam in Kuwait, Kuwait, on or about November 26, 1976, and ceased to live together as husband and wife on or about September 27, 1981. In the further alternative Petitioner alleges that the parties are informally married as common law husband and wife in that they agreed to be married and thereafter lived together in Texas as husband and wife and there represented to others that they were married.

The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation. There is no child born or adopted of this marriage, and none is expected.

## IV.

Petitioner specially pleads the Moslem law known as the Law of Islam and the Laws of the Nation of India as each relates to the validity of the parties' marriage and same will be offered by Petitioner to support the marriage between the parties. The Court will be asked to take judicial notice of the foreign decrees showing the marriages of the parties and the divorce of Respondent from Intervenor as revealed during depositions and discovery in this case. Copies of these foreign decrees will be offered at trial under Article 3731a of the Revised Texas Civil Statutes and the common law recognized therein. Respondent and Intervenor have been previously furnished copies.

Husband then filed an amended answer and a cross action in which he, more or less, joined the position taken by Wife One in her plea in intervention. In their pleadings, neither Wife One nor Husband actually denied that the key events alleged by Wife Two in her amended petition occurred.

After a pre-trial conference the trial court ordered that the trial would proceed in three stages. The first stage would address the question of which law—foreign, domestic, religious, civil or otherwise—to apply to the issues in the case. This determination would be made by the trial court. In the second stage the substantive issues raised by the pleadings—the validity of Husband and Wife One's divorce and the validity of Husband and Wife Two's marriages—would be determined, based upon the law selected in stage one. Finally, the trial court allowed for a third stage if necessary to litigate any questions of property division arising out of the stage two proceedings.

At the first stage of the trial, three experts—two called by Wife Two and one called by Wife One—testified about Islamic law and "talak," an ex parte Islamic divorce procedure alleged by Wife Two to have occurred in this case. No evidence was submitted at this hearing about the underlying events. After this hearing and the submission of trial briefs by the parties, the trial court held that the law of the State of Texas would apply to all issues raised by the pleadings. It is this decision

of the trial court, to apply the law of the State of Texas to the stage two issues, which Wife Two complains about on appeal. Wife Two does not complain about the stage two proceedings themselves.

At the conclusion of the stage two proceedings the trial court granted Wife One's motion for an instructed verdict. Pursuant to this motion, the trial court ruled as a matter of law that the marriage between Husband and Wife One was a valid marriage which had never been dissolved in any manner (this is a reference to talak) subject to recognition by the trial court; that the alleged marriage of Husband and Wife Two in Bombay, India, on or about June 17, 1975, was void as a matter of law; and further that the alleged marriage of Husband and Wife Two in the Republic of Kuwait on or about November 22, 1976, was void as a matter of law. Although the trial court, at the conclusion of the evidence, ruled as a matter of law that Wife Two was never validly married to Husband, the trial court did allow the following two special issues to be submitted to the jury: (1) did Wife Two believe, in good faith, that Husband validly divorced Wife One on November 21, 1976?; and (2) did Wife Two participate in good faith in a marriage ceremony with Husband in Kuwait on November 22, 1976? The jury answered both these issues no.

After receiving the unfavorable verdict, Wife Two filed a supplemental petition in which she asserted various non-marriage relationship theories to support her claim for certain real and personal property held or acquired by Husband.

In its final judgment rendered several months after the stage two proceedings, the trial court apparently rejected Wife Two's supplemental petition and held, based on the jury's answers to the above two special issues, that the relationship between Wife Two and Husband was meretricious and that as a result, no valuation or division of property was warranted.

Wife Two then filed an appeal. On May 23, 1984, the statement of facts and the exhibits from the first stage of trial were filed with this court. No statement of facts or exhibits from the second stage were ever introduced.

Wife Two's appellate brief was filed on July 9, 1984. In her brief, Wife Two made various factual assertions which can be summarized as follows:

On June 6, 1957, Husband and Wife One were married in Udaipur, India. In 1966, Husband began cohabiting with Wife Two. In 1967, Husband was granted permanent resident alien status in the United States. Approximately eight years later, on June 17, 1975, the Husband and Wife Two converted to Islam and were married in Bombay, India, in an Islamic ceremony. Over a year later, on November 21, 1976, Husband divorced Wife One in Kuwait according to Islamic law. This divorce was rendered through a summary, ex parte procedure known as talak. Under this procedure, the divorce was rendered when husband pronounced three times: "I divorce you." Wife One was not notified of this procedure. The day after this talak procedure, Husband and Wife Two were married again in another Muslim ceremony. On March 8, 1977, Wife Two was granted permanent resident alien status in the U.S. as wife of Husband, who had already been granted resident alien status. Husband is a petroleum engineer with his own consulting business serving customers in the Near East. He has lived in Dallas for several years with Wife Two.

On September 4, 1984, appellees (Husband and Wife One) filed a joint brief. In it appellees, pursuant to TEX.R.CIV.P. 419, stated that they refused to accept as true any factual assertion made by Wife Two in her brief, and furthermore, appellees stated the record was deficient in that it did not contain any evidence concerning the actual events surrounding the alleged divorce and marriage. Also on September 4, appellees filed a motion in which they requested that Wife Two be ordered to comply with TEX.R.CIV.P. 377(d) regarding incomplete records. In subsequent motions filed during October and November, both sides refused to pay the $4,000 cost to

prepare the stage two statement of facts, and no such statement of facts was ever filed with this court.

A threshold question before us concerns the state of the record. Appellees have specifically denied all factual assertions made by appellant in her brief, and consequently contend that there is no evidence in the record to establish any facts whatsoever, including the key ones that certain divorce and marriage ceremonies occurred in India and Kuwait.

We disagree with appellees' view of the appellate record. Neither Wife One in her plea in intervention nor Husband in his answer or cross action denied the occurrence of the marriage and divorce ceremonies in India and Kuwait. Instead, Wife One and Husband implicitly acknowledged or admitted the occurrence of such acts by alleging in their pleadings that the acts had certain legal consequences favorable to their interests. *See Johnson v. Johnson,* 579 S.W.2d 30, 31 (Tex.Civ.App.—Beaumont 1979, no writ). Furthermore, our review of the appellate record before us convinces us that there was never any dispute that certain acts or events occurred, and that it was indeed with that understanding that the trial court made its decision to apply Texas law after hearing the expert testimony in the stage one hearing.

We find, therefore, that Husband and Wife Two participated in certain ceremonies in India and Kuwait, as asserted by Wife Two in her brief. As to the precise circumstances of such ceremonies, we make no finding.

We now turn to the merits of the case. In two points of error, Wife Two contends the trial court erred in applying Texas law to resolve the issues raised by the marriage and divorce ceremonies which occurred in Kuwait and India.

■ Traditionally, courts have chosen and used the law of the place a divorce or marriage purportedly occurs to determine the validity of the ceremony. *Braddock v. Taylor,* 592 S.W.2d 40, 42 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.) (court ap-

plies California law, which does not recognize common law marriages, to hold that a relationship carried on in California does not rise to the level of marriage); *Nevarez v. Bailon,* 287 S.W.2d 521, 522 (Tex.Civ. App.—El Paso 1956, writ ref'd) (court applies Mexican law to hold that a concubinage relationship carried on in Mexico does not rise to the level of marriage). Two recent decisions by the Supreme Court of Texas, however, indicate that choice-of-law decisions should not be made on the basis of the mechanical test of where the act occurred (lex loci) but should instead be made on the basis of the most significant relationship approach, using the factors set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS sec. 6 (1971). *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex.1984); *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979). Thus, based on *Duncan* and *Gutierrez,* we hold that sec. 6 criteria, and not the place of celebration test, should be applied to determine choice of law in a marriage or divorce context.

■ Before making such a determination, we note that appellant failed to request findings of fact or conclusions of law. In a trial to the court where no findings of fact or conclusions of law are filed or requested, the judgment of the trial court implies all necessary findings of fact in support thereof. *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Where the implied findings of fact are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case. *W.E.R.* 669 S.W.2d at 717; *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1977). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Rheiner v. Varner,* 627 S.W.2d 459, 462 (Tex.App.—Tyler 1981, no writ).

The expert testimony and voluminous exhibits presented at the first stage of the

trial present a somewhat conflicting view of Islamic law as it applies to conversion to Islam and to the talak. On the one hand, Wife Two's experts testified to the effect that a purported conversion by a man to Islam for the sole purpose of divorcing his wife through talak, and the talak itself, are not subject to any attack whatsoever on the grounds that they were simply sham ceremonies. According to this view, Islamic law recognizes and validates any conversion and subsequent talak so long as certain formalities are complied with, regardless of the man's underlying intentions and motives. Wife One's expert, on the other hand, stated that under Islamic law, conversion accomplished for the purpose of circumventing the law will not be enforced. The expert went on to say that, in his opinion, the alleged divorce between Husband and Wife One, procured through talak, would be invalid.

■ We now list the sec. 6 choice of law principles:

Sec. 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS sec. 6 (1971).

■ Our review of the record convinces us that the most critical consideration is b, the relevant policies of the forum. Before examining factor b, we note that while it is true that the critical events in the case did not occur in Texas, that at the time of the events, the parties themselves had no apparent connection with Texas, and that even today, Husband and Wife Two are citizens of India and not the U.S., Texas's interest in this suit does not arise simply from the fact that it is the place of the trial. Texas's nexus to this lawsuit lies in the fact that Husband and Wife Two have lived here since 1977, during which time they acquired real property within the State. That connection would enhance the prerogative of the trial court to consider the relevant policies of Texas in deciding the present conflicts of law question.

With that connection in mind, we now turn to the policy question itself. Based on the testimony of Wife Two's experts, the trial court could have found that Islamic law simply allows a non-Muslim man to convert to Islam by pronouncing a short phrase, and then divorce his wife through the ex parte procedure of talak. The harshness of such a result to the non-Muslim divorced wife runs so counter to our notions of good morals and natural justice that we hold that Islamic law in this situation need not be applied. *See Robertson v. Estate of McKnight*, 609 S.W.2d 534, 537 (Tex.1980); *Gutierrez*, 583 S.W.2d at 321.

Nor do we see how any of the other sec. 6 factors might outweigh factor b. Because the facts of this case are so unusual, it hardly seems likely that the needs of the international systems will be implicated by it. Furthermore, there was no factual showing that any official state body in either India or Kuwait had actually executed or confirmed the divorce and marriage, and thus factor c is not overly critical. *Cf. Chaudry v. Chaudry*, 159 N.J.Super. 566, 388 A.2d 1000, 1005 (New Jersey 1978)

(talak was confirmed by a Pakistani court after it had been contested). We also note that, in regards to factor d, the jury found that Wife Two did not in good faith believe that Husband had divorced Wife One, or that she was married to Husband. While these jury findings were made after the court's decision to apply Texas law, so that the trial court could not have relied on them, they nonetheless support our decision to affirm the judgment. As for factors e, f, and g, none of them cut strongly in favor of Wife Two's position. Wife Two's points of error one and two are overruled.

The judgment is affirmed.