CV4-014 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00014-CV







Mike Youngblood and Roxanne Youngblood, Appellants



v.



Thomas J. Sibley and Thomas J. Sibley, P.C., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 91-16569, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








 Appellants Mike and Roxanne Youngblood appeal a summary judgment rendered in
favor of appellees Thomas J. Sibley and Thomas J. Sibley, P.C. (collectively "Sibley"), on
claims relating to a nonjudicial foreclosure of the Youngbloods' real property. We will affirm
the trial-court judgment. 



BACKGROUND


 In October 1984, the Youngbloods executed a promissory note to First Federal Savings
& Loan Association of Beaumont ("First Federal") in the original principal amount of
$56,000. A deed of trust lien on an Austin condominium secured the note. Payments on the
note were due the first day of each month; subject to First Federal's assessment of a late
charge, the note permitted payments tendered after the monthly due date. 

 The Youngbloods did not pay their November 1989 installment until December 11,
1989. On December 14, 1989, First Federal returned the payment to the Youngbloods as
insufficient. At that time, First Federal requested another payment for the total amount it
claimed the Youngbloods owed. The Youngbloods did not submit another payment.

 On January 10, 1990, when First Federal failed to receive any payment for the months
of November 1989 through January 1990, Vice President C.E. Simmons mailed certified
letters to the Youngbloods. These letters notified the Youngbloods of First Federal's intent to
accelerate the payments due on the note and to initiate foreclosure proceedings if past due
installments were not paid immediately. These letters were returned unclaimed to First
Federal. (1) 

 Thomas Sibley, attorney for First Federal, mailed the Youngbloods a demand letter
dated February 2, 1990. On February 12, Sibley sent the Youngbloods a notice stating that
First Federal had accelerated maturity of the unpaid note balance and that foreclosure of the
condominium would occur on March 6, 1990. Both these letters were returned to Sibley. 

 Sibley prepared a notice of trustee's sale, which was filed in Travis County on
February 12, 1990. First Federal bought the property at the trustee's sale on March 6, 1990. 
The trustee's deed was filed and recorded in Travis County on March 27. After the
foreclosure sale, a deficiency still remained on the note.

 On June 7, 1990, First Federal assigned its rights in the note and the deed of trust to
PMI Mortgage Insurance Company ("PMI"). Accordingly, on November 25, 1991, PMI filed
suit against the Youngbloods seeking a judgment for the deficiency on the balance of the note. 
The Youngbloods filed a counterclaim. PMI and the Youngbloods settled their claims against
each other by an agreement with mutual release on November 12, 1992.

 On December 16, 1992, the Youngbloods filed a third-party petition against Sibley and
R.F. DuBois, Jr., the First Federal chairman of the board at the time of foreclosure. Later,
the Youngbloods filed a first amended third-party petition, adding as a party defendant Patrick
Byrd, the innocent purchaser of the foreclosed property from First Federal. Byrd and the
Youngbloods settled. On June 8, 1993, the Youngbloods filed a second amended third-party
petition, alleging claims against Sibley for negligence, usury, and violations of the Texas Debt
Collection Act (the "Collection Act"), Tex. Rev. Civ. Stat. Ann. arts. 5069-11.01-.12 (West
1987 & Supp. 1995), and the Texas Deceptive Trade Practices-Consumer Protection Act (the
"DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41 -.63 (West 1987 & Supp. 1995).

 The Youngbloods moved for partial summary judgment against Sibley on their usury
claim; Sibley moved for summary judgment on all of the Youngbloods' claims. The trial court
denied the Youngbloods' motion and granted Sibley's motion in an interlocutory summary
judgment signed November 2 and incorporated into the November 23 final judgment. The
final judgment included the court's ruling that the Youngbloods were entitled to recover
damages for wrongful foreclosure and costs from DuBois in the sum of $10,500. Upon
motion by Sibley, the final judgment was modified, corrected, and reformed by the trial court
on January 26, 1994. 

 The Youngbloods appeal. Filing notice under Texas Rule of Appellate Procedure
40(a)(4), the Youngbloods limit their complaint on appeal to the trial court's granting of
Sibley's motion for summary judgment. They do not advance a broad point of error, see
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970), but instead assert specific
reasons why the summary judgment was improper.



STANDARD OF REVIEW


 The standards for reviewing a motion for summary judgment are well established: (1)
the movants for summary judgment have the burden of showing that no genuine issue of
material fact exists and that they are entitled to judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovants will be taken as true; and (3) every reasonable inference must be
indulged in favor of the nonmovants and any doubts resolved in their favor. Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).



Usury


 In their first point of error, the Youngbloods complain that the trial court erred by
denying their motion for partial summary judgment because Sibley's letter of February 12,
1990, was a "charge" of usurious interest as a matter of law. In response, Sibley contends that
the Youngbloods limited their appeal and cannot complain about the denial of their motion for
summary judgment. The Youngbloods limited their appeal to the granting of Sibley's motion. (2) 
Their first point of error goes to the denial of their motion rather than the granting of Sibley's
motion and therefore exceeds the limitations of their appeal. 

 Sibley further contends that by failing to challenge the granting of Sibley's motion for
summary judgment in a point of error, the Youngbloods failed to preserve any alleged error
for review. When both parties move for summary judgment, and one motion is granted while
the other is denied, the appellate court can review the denial only if the appealing parties
complain of both the granting of the opponent's motion and the denial of their own motion. 
Fidelity Mut. Life Ins. Co. v. Kaminsky, 820 S.W.2d 878, 880 (Tex. App.--Texarkana 1991,
writ denied); Pioneer Chlor Alkali Co. v. Royal Indem. Co., 879 S.W.2d 920, 928 (Tex.
App.--Houston [14th Dist.] 1994, no writ h.); Phillips Natural Gas Co. v. Cardiff, 823 S.W.2d
314, 317 (Tex. App.--Houston [1st Dist.] 1991, writ denied); Utica Nat'l Ins. Co. v. Fidelity &
Casualty Co., 812 S.W.2d 656, 658 (Tex. App.--Dallas 1991, writ denied). Cf. Jones v.
Strauss, 745 S.W.2d 898, 900 (Tex. 1988) (stating that when both parties move for summary
judgment and one motion is granted but the other denied, the appellate court should review the
questions presented); Tobin v. Garcia, 316 S.W.2d 396, 400-01 (Tex. 1958); Buckner Glass
& Mirror, Inc. v. T.A. Pritchard Co., 697 S.W.2d 712, 714 (Tex. App.--Corpus Christi 1985,
no writ). However, appellate courts liberally construe points of error. See Runyan v. Mullins,
864 S.W.2d 785, 788 (Tex. App.--Fort Worth 1993, writ denied). They consider more than
the literal wording of a point of error when determining its scope. Id. See Tex. R. App. P.
74(p); Pool v. Ford Motor Co., 715 S.W.2d 629, 632-33 (Tex. 1986). "The scope of the
point of error and the matter presented for appellate review must be determined from an
examination of the statement, argument, and authorities that the appellant urges in his brief in
connection with that point." Butler v. Hide-A-Way Lake Club, Inc., 730 S.W.2d 405, 409
(Tex. App--Eastland 1987, writ ref'd n.r.e.); see O'Neil v. Mack Trucks, Inc., 542 S.W.2d
112, 114 (Tex. 1976). 

 The Youngbloods' first point of error does not attack the trial court's granting of
Sibley's summary judgment motion on the issue of usury or for any other reason. Therefore,
their point of error is waived. See Fidelity Mut. Life, 820 S.W.2d at 880. Appellate courts
may not reverse a trial-court judgment in the absence of properly assigned points of error. 
San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex. 1990). Nevertheless, the
Youngbloods contend the point sufficiently advises this Court and Sibley of their attempt to
contest the granting of Sibley's motion as well as the denial of their own motion. Each party
has briefed and argued on appeal the issue predicating both the trial court's denial of the
Youngbloods' motion and its granting of Sibley's motion: whether Sibley charged the
Youngbloods usurious interest. Even assuming the Youngbloods have not waived error, their
complaint fails. 

 The Youngbloods contend that Sibley's letter of February 12, 1990, was a charge of
usurious interest as a matter of law. (3) This letter itemized the amounts First Federal claimed
the Youngbloods owed, including $92.16 in late charges. The Youngbloods and Sibley agree
that this late charge exceeded the late charge of four percent of delinquent principal and
interest as specified in the note; First Federal apparently charged the Youngbloods about five
percent. (4) The Youngbloods argue that the excessive late charge thus included a charge of
usurious interest.

 The Youngbloods' primary authority for their contention that Sibley's February 12
letter subjects him to liability for usury is Lupo v. Equity Collection Service, 808 S.W.2d 122
(Tex. App.--Houston [1st Dist.] 1991, no writ). In Lupo, the court held that a collection
agency could be liable for the statutory penalty for usury, even though the agency was not a
party to the original loan transaction. The court explained:



Otherwise, one who was not a party to the original loan transaction, such as a
collection agency, could attempt to collect usurious interest without fear of the
penalties for usury. A collection agency that collected interest above that
allowed by law would profit from its collection. Without the threat of statutory
penalties for usury, a collection agency would be free to attempt such a
collection.



Id. at 124. 

 The decision in Lupo was proper in light of the collection agency's ability to profit
from its collection of usurious interest. In the instant cause, we continue to follow established
Texas precedent: only those directly benefiting or profiting from the usurious transaction,
rather than all connected with the collection, may be subject to the statutory penalty for usury. 
See Stacks v. East Dallas Clinic, 409 S.W.2d 842, 844-45 (Tex. 1966) (holding that in the
applicable usury statute, "receiving" meant "benefiting" from the usurious interest); Commerce
Trust Co. v. Best, 80 S.W.2d 942, 947 (Tex. 1935). Cf. Rheiner v. Varner, 627 S.W.2d 459,
465 (Tex. App.--Tyler 1981, no writ) (holding that in applicable usury statute, term "charges"
means unilaterally placing on an account amount due as interest). 

 Moreover, the Youngbloods' note contains a section entitled "Loan Charges." (5) This
savings clause effectively eliminates the Youngbloods' contention that Sibley's letter was an
unauthorized charge of interest. See Woodcrest Assocs. Ltd. v. Commonwealth Mortgage
Corp., 775 S.W.2d 434, 439 (Tex. App.--Dallas 1989, writ denied) (holding that savings
clauses in underlying notes and deed of trust which stated that all interest in connection with
the loan "shall under no circumstances exceed the maximum amount of interest permitted by
applicable law" and that demands exceeding the legal limit would be reduced to the limit of
validity, "automatically constricted" all demands of interest within the bounds of law); see
First S. Sav. Ass'n v. First S. Partners, II, Ltd., 957 F.2d 174, 177-78 (5th Cir. 1992). The
trial court did not err in its judgment that Sibley did not charge the Youngbloods usurious
interest. The Youngbloods' first point of error is overruled. 




Debt Collection Act and Deceptive Trade Practices-Consumer Protection Act

 In their second point of error, the Youngbloods contend that the trial court erred by
granting Sibley's motion for summary judgment because Sibley failed to establish the affirmative
defense of limitations as a matter of law with regard to the Youngbloods' claims under the
Collection Act and the DTPA.

 The Youngbloods' second amended third-party petition, filed June 8, 1993, alleges that
Sibley violated the DTPA, Tex. Bus. & Com. Code Ann. §§ 17.41 -.63 (West 1987 & Supp.
1995), and the Collection Act, Tex. Rev. Civ. Stat. Ann. arts. 5069-11.01-.12 (West 1987 &
Supp. 1995), by improperly preparing foreclosure documents. (6) Section 17.565 of the DTPA
provides:



All actions brought under this subchapter must be commenced within two years
after the date on which the false, misleading, or deceptive act or practice occurred
or within two years after the consumer discovered or in the exercise of reasonable
diligence should have discovered the occurrence of the false, misleading, or
deceptive act or practice.



Tex. Bus. & Com. Code Ann. § 17.565 (West 1987) (emphasis added). (7) As such, the two year
limitations period in the instant cause began to run at the time of the alleged improper preparation
of the foreclosure documents; at the latest, it began to run March 6, 1990, the date of the
foreclosure sale. This determination places the occurrence of Sibley's alleged improper actions
at more than two years before the filing of the Youngbloods' DTPA and Collection Act causes
of action on June 8, 1993. However, the Youngbloods contend that their causes of action fall
within the discovery provision of the DTPA statute of limitations. 

 To be entitled to summary judgment based on the affirmative defense of limitations, the
movant "must prove when the cause of action accrued and must negate the discovery rule by
proving as a matter of law that there is no genuine issue of fact about when the [non-movant]
discovered or should have discovered the nature of the injury." Burns v. Thomas, 786 S.W.2d
266, 267 (Tex. 1990). Thus, in the instant case, Sibley had the burden to establish with summary
judgment evidence when the Youngbloods discovered or should have discovered Sibley's alleged
deceptive practices.

 The Youngbloods claim they never received any notification or warning of the impending
foreclosure sale through the mail. (8) They also claim they had no knowledge of Sibley's existence
or role in the foreclosure until after November 1991 when they received a copy of his February
12, 1990, letter during the discovery process of PMI's suit against the Youngbloods, which was
filed November 25, 1991. 

 The record shows that notice of the trustee's sale was filed in the public records of Travis
County on February 12, 1990. Further, after the March 6 foreclosure, the trustee's deed was
filed and recorded in the real estate records of Travis County on March 27, 1990. Thus, even if
the Youngbloods did not actually receive the foreclosure documents, they had constructive notice
of the trustee's sale and the subsequent trustee's deed. "A person is charged with constructive
notice of the actual knowledge that could have been acquired by examining public records." 
Mooney v. Harlin, 622 S.W.2d 83, 85 (Tex. 1981); Vance v. Bell, 797 S.W.2d 403, 405 (Tex.
App.--Austin 1990, no writ). See also Tex. Prop. Code Ann. § 13.002 (West 1984) (properly
recording instrument in proper county is notice to all people of the instrument's existence). 
Constructive notice in law creates an irrebuttable presumption of actual notice. Mooney, 622
S.W.2d at 85; University State Bank v. Gifford-Hill Concrete Corp., 431 S.W.2d 561, 571 (Tex.
Civ. App.--Fort Worth 1968, writ ref'd n.r.e.). Therefore, regardless of when the Youngbloods
claim to have received notice of the foreclosure, the law presumes that they not only should have
but did have notice of the foreclosure by March 27, 1990. 

 Thus, we hold that the limitations period for the Youngbloods' DTPA and Collection Act
actions began to run when the Youngbloods should have discovered Sibley's role in the
foreclosure proceedings, shortly after March 27, 1990, the date the trustee's deed of sale was filed
in the public records of Travis County. We hold that the trial court correctly applied the statute
of limitations to conclude that the DTPA and Collection Act actions were barred by the two year
statute of limitations as a matter of law. The Youngbloods' second point of error is overruled.

 The Youngbloods' third point of error contends that the trial court erred by granting
summary judgment because Sibley failed to negate the Youngbloods' "consumer" status under the
DTPA and the Collection Act. Since the DTPA and Collection Act claims are barred by the
statute of limitations, we do not address this point of error. 

Negligence Per Se


 In their fourth point of error, the Youngbloods contend that the trial court erred by
granting Sibley's motion for summary judgment because Sibley was negligent per se and the
Youngbloods' damages were foreseeable as a matter of law. The Youngbloods argue that Sibley
failed to comply with the statutory requirements for a nonjudicial foreclosure, thus creating an
action for negligence per se. See Tex. Prop. Code Ann. § 51.002 (West Supp. 1995). 

 In determining whether Sibley owed any statutory duty to the Youngbloods, we examine
the subject statute. Section 51.002(b) of the Property Code provides in part:



Notice of the sale, which must include a statement of the earliest time at which the
sale will begin, must be given at least 21 days before the date of the sale:

 . . . .

 (3) by the holder of the debt to which the power of sale is related
serving written notice of the sale by certified mail on each debtor who, according
to the records of the holder of the debt, is obligated to pay the debt.



Tex. Prop. Code Ann. § 51.002(b) (emphasis added). Thus, the debt holder has the duty to
ensure sufficient notice of foreclosure to the debtor. As such, in the instant cause, First Federal,
the holder of the debt, owed a statutory duty to the Youngbloods to ensure proper notice of the
foreclosure sale of their property. 

 Sibley, sued in his individual capacity and not as a representative of First Federal, is not
a debt holder and therefore owes no duty under the statute sued upon by the Youngbloods. Sibley
was at all times acting on behalf of First Federal, the Youngbloods' lender. The attorney-client
relationship between Sibley and First Federal was one of agent and principal. See Texas
Employers Ins. Ass'n v. Wermske, 349 S.W.2d 90, 93 (Tex. 1961). Under principles of agency,
actions or omissions committed by the agent-attorney within the scope of the agency are attributed
to the principal-client. Id.; Nunnery v. Texas Casualty Ins. Co., 362 S.W.2d 865, 867 (Tex. Civ.
App.--Austin 1962, no writ). Thus, any failure or neglect of Sibley to properly prepare
foreclosure documents may be attributed to First Federal, which was not joined as a party in the
instant cause. The Youngbloods' fourth point of error is overruled.

 The Youngbloods have failed to demonstrate that the trial court erred in rendering
summary judgment on behalf of Sibley. Having overruled the Youngbloods' first, second, and
fourth points of error, we affirm the judgment of the trial court.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: February 8, 1995

Do Not Publish

1.   Duplicate copies of the letters were sent to the condominium and to the Youngbloods. 
The letters sent to the condominium were returned because there were no occupants at the
condominium to accept the mail. The letters sent to the Youngbloods' address were also
returned, possibly due to an incorrect zip code.
2.   The final judgment included several decrees in addition to the Youngbloods' take-nothing judgment in favor of Sibley.
3.   The Texas Revised Civil Statutes provides a statutory penalty for "any person who
contracts for, charges or receives" usurious interest. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06
(West 1987).
4.   Payment coupons and reminders sent by First Federal to the Youngbloods list the note's
monthly payment as $610.00; the Youngbloods' brief indicates the principal and interest
installments as follows: $525.85 for November 1989; $530.73 for both December 1989 and
January 1990. Payment coupons show that a late charge of $26.29 was assessed for all
months in question. Because $26.29 exceeds four percent of whichever amount was due each
month, the precise amount of the monthly payment is immaterial to the resolution of the
Youngbloods' point of error.
5.   This portion of the note reads:


If a law . . . is finally interpreted so that the interest . . . collected or to
be collected in connection with this loan exceed the permitted limits,
then: (i) any such loan charge shall be reduced by the amount necessary
to reduce the charge to the permitted limit; and (ii) any sums already
collected from [the debtor] which exceeded permitted limits will be
refunded to [the debtor].
6.   The alleged errors included 1) the attempt to collect an unauthorized late payment
charge; 2) improper notice before the note's acceleration; and 3) deceptive representation
through threats of improper foreclosure.
7.   The limitations provision of the DTPA applies to the Collection Act. The Collection Act
states that "[a] violation of any provision of . . . [the Collection] Act by any person is a
deceptive trade practice . . . and is actionable pursuant to . . . [the DTPA] subchapter." Tex.
Rev. Civ. Stat. Ann. art. 5069-11.11(a) (West 1987). 
8.   Apparently, copies of the certified notices and demand letters were sent to the
Youngbloods' unoccupied condominium. Copies were also sent to the Youngbloods'
residence, but never arrived because of an incorrect zip code.