Opinion issued August 2, 2007 











 







In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01113-CV

__________


C&K INVESTMENTS, KEN D. PARR A/K/A KENNETH DARWIN PARR,
SR., CORINE THORNTON PARR, AND PARR FAMILY LIMITED
PARTNERSHIP D/B/A C&K INVESTMENTS, Appellants


V.


FIESTA GROUP, INC., Appellee






On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 2001-64877






O P I N I O N

 Appellants/cross-appellees, C & K Investments, Ken D. Parr also known as
Kenneth Darwin Parr, Sr., Corine Thornton Parr, and Parr Family Limited Partnership
doing business as C & K Investments (the "Partnership") (collectively "the Parr
defendants"), challenge the trial court's judgment, rendered after a jury verdict,
awarding appellee/cross-appellant, Fiesta Group, Inc. ("Fiesta"), damages and
attorneys' fees for the Parr defendants' contracting for, charging, and receiving
usurious interest in violation of the Texas Finance Code. (1) 

 In nine points of error, the Parr defendants contend that the evidence is legally
and factually insufficient to support the jury's findings that the Partnership and Ken
and Corine, as general partners, contracted for, charged, or received usurious interest;
the judgment of $92,245.23 against the Partnership and Ken and Corine for charging
usurious interest in violation of section 305.001 of the Finance Code; the judgment
of $101,400 against the Partnership and Ken and Corine for charging and receiving
usurious interest in violation of section 305.002 of the Finance Code; the judgment
of $238,178.46 against Ken for contracting for usurious interest in violation of
section 305.001 of the Finance Code; and the trial court's conditional award of
appellate attorneys' fees to Fiesta.

 In its first two cross-issues, Fiesta contends that its wrongful foreclosure claim
was a separate cause of action for compensatory damages and not cumulative of its
usury claim and that the trial court erred in dismissing its wrongful foreclosure claim
without giving it the opportunity to amend its pleadings. In its third cross-issue,
Fiesta contends that it "is entitled to the statutory post-judgment interest rate."

 We affirm in part, reverse and render in part, and reverse and remand in part. 

Factual and Procedural Background


 Fiesta sued the Parr defendants for usury and wrongful foreclosure, alleging
that Ken made two loans to Fiesta and that Ken required Fiesta to return a portion of
the loan proceeds upon funding "as a condition" of making the loans. The loans were
secured by properties owned by Fiesta and were evidenced by separate notes. Ken
eventually assigned the notes to the Partnership. Fiesta later defaulted, and the
Partnership accelerated the notes and foreclosed on Fiesta's properties. In its usury
claim, Fiesta alleged that the Parr defendants "contracted for, charged and/or received
interest and other charges" in excess of the amount authorized by law. Fiesta sought
statutory penalties for the Parr defendants' violation of the Finance Code. 

 The trial court dismissed Fiesta's wrongful foreclosure claim, and Fiesta's
usury claim was tried to a jury. The basic facts relevant to this appeal, which were
established by the testimony of Ken Parr and Nicholas Rocha, Fiesta's president, and
other documentary evidence presented at trial, are largely undisputed. On December
30, 1999, Ken made the first of two loans to Fiesta, evidenced by a "balloon note" of
the same date. The note, with an interest rate of 18%, was executed by Rocha on
behalf of Fiesta and payable to Ken, the principal amount was $174,000, and the
original term was December 30, 1999 to December 30, 2004. It required monthly
payments of $2,802.13, beginning on January 30, 2000 and ending in a balloon
payment on December 30, 2004, and the loan was secured by a deed of trust in
multiple properties owned by Fiesta. 

 On February 3, 2000, Ken made the second of two loans to Fiesta, evidenced
by a "real estate lien note" of the same date. The note, with an interest rate of 18%,
was executed by Rocha on behalf of Fiesta and payable to Ken, the principal amount
was $101,400, and the original term was February 3, 2000 to February 3, 2007. It
required monthly payments of $1,632.97, beginning on March 3, 2000 and ending in
a balloon payment on February 3, 2007, and the loan was secured by a deed of trust
in multiple properties owned by Fiesta. 

 Following each closing, Fiesta began making payments to Ken on each loan. 
On April 18, 2000, Ken assigned both notes to the Partnership, whose general
partners were Ken and Corine. After the assignment, Fiesta defaulted on both loans.
The Partnership sent Fiesta a notice of default and acceleration. Fiesta did not cure
the default, and, on December 11, 2000, the Partnership sent Fiesta a notice of
acceleration. The Partnership accelerated the maturity of both notes and provided
notice of foreclosure. As stated in the Parr defendants' answers to interrogatories,
which were introduced into evidence, the Parr defendants claimed that on the date of
acceleration, the principal due on the first note was $172,593.03, plus interest of
$11,409.76, and that the principal due on the second note was $100,702.49, plus
interest of $6,458.42. Trustees deeds, which were introduced into evidence,
established that the properties secured by the first and second notes were sold at a
public sale on May 1, 2001, and that the sales proceeds equaled the balances due on
both notes. Ken maintained a record of the payments made by Fiesta under each loan,
which was introduced into evidence. Ken's record showed that Ken credited Fiesta's
payments against the full face amount of the principal. 

 The specific evidence giving rise to the usury claims was disputed at trial. 
Rocha testified that as a condition for both loans, Ken told him that "he would charge
[] 18%" and that "it would be a 10% fee for him to do the deal." Rocha, who stated
that he was confused by the condition for the 10% fee, questioned why he was
required to "giv[e] back ten," but ultimately agreed to the condition in light of his
need for funds. Ken described the payments as a "fee," "commission," or "equity." 
The first loan closed on December 30, 1999, and, in light of the front-end payments,
Rocha received only "a portion" of the principal. Pursuant to Ken's condition, Rocha
instructed the title company to make two checks in the amount of $9,000 each, for a
total of $18,000. Rocha then endorsed the checks "over to" Ken and gave them to
him. Consequently, Fiesta actually received only $156,000 of the $174,000 stated
principal of the loan. When Rocha asked Ken how he planned to cash the checks,
Ken told him that he had connections at the bank. Fiesta introduced into evidence
copies of both $9,000 checks, which were dated December 30, 1999, and made
payable to and endorsed by Rocha. 

 In regard to the second loan for $101,400, Rocha testified that he and Ken
followed a similar course of conduct. As "a prerequisite to the deal," Ken "wanted
10% back under the table." At the second loan's closing on February 3, 2000, Rocha
had the title company make two checks in the amount of $5,070 each, for a total of
$10,140. Rocha then endorsed these checks and gave them to Ken. Consequently,
Fiesta actually received only $91,260 of the $101,400 stated principal of the loan. The
$5,070 checks, which were also both introduced into evidence, were dated February
3, 2000, and made payable to and endorsed by Rocha. 

 Contrary to Rocha's testimony, Ken denied receiving the front-end payments
at the closings. Ken agreed, however, that Rocha's endorsement and Ken's bank
account numbers appeared on the back of the checks and that the checks were cashed
or presented at Ken's bank shortly after the closings. However, Rocha testified that
the bank account numbers did not appear on the checks at the closings and that he had
no knowledge of Ken's bank account numbers. Fiesta asserted, thus, that Ken's bank
account numbers were placed on the checks by or at the direction of Ken and that Ken
received the proceeds from the checks. Ken also agreed that he was familiar with
banking regulations requiring banks to take certain reporting measures if checks in
excess of $10,000 are cashed. Fiesta used this admission to suggest that Ken
intentionally structured the transactions to avoid reporting the payments.

 Although the parties presented conflicting testimony on the occurrence of the
front-end payments, on appeal, Ken does not challenge the jury's finding that "as a
condition to making the loans" he "request[ed] and receive[d] the proceeds" from all
four checks. The record established that, despite these "front-end" payments, Fiesta
made its monthly payments in accordance with the terms of the notes and that Ken
and the Partnership credited Fiesta's monthly payments against the full face amount
of the notes. The record further established that as a result of its foreclosure on
Fiesta's properties, the Partnership received all amounts due on the notes, including
unpaid principal and interest, based on the full face amount of the notes and without
any credit for the front-end payments.

 At the conclusion of the trial, the jury found that Ken requested and received
the proceeds from the checks "as a condition to making the loans," the loans were
accelerated on December 11, 2000, and Ken, both individually and as a general
partner, and the Partnership contracted for, charged, or received interest greater than
the amount authorized by law. Based on these findings, the trial court determined,
as a matter of law, the applicable statutory usury penalties and the amounts of those
penalties. See Duggan v. Marshall, 7 S.W.3d 888, 892 (Tex. App.--Houston [1st
Dist.] 1999, no pet.) ("When usury is properly pleaded and supported by the evidence,
then the measure of damages is a matter of law, and the court has the duty to apply
the proper measure of damages."). The trial court signed a final judgment awarding
Fiesta (1) $238,178.46 from Ken for "contracting for" usurious interest in violation
of section 305.001, (2) $92,245.23 from the Partnership, Ken, and Corine, jointly and
severally, for "charging" usurious interest in violation of section 305.001, and (3)
$101,400 from the Partnership, Ken, and Corine, jointly and severally, for "charging"
and "receiving" usurious interest in violation of section 305.002. 

Standard of Review

 We will sustain a legal sufficiency or "no-evidence" challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal
sufficiency review, a court must consider evidence in the light most favorable to the
verdict, and indulge every reasonable inference that would support it. Id. at 822. If
there is more than a scintilla of evidence to support the challenged finding, we must
uphold it. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998). "When the evidence offered to prove a vital fact is so
weak as to do no more than create a mere surmise or suspicion of its existence, the
evidence is no more than a scintilla and, in legal effect, is no evidence." Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then jurors must be
allowed to do so. City of Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003). A reviewing court cannot substitute its
judgment for that of the trier-of-fact, so long as the evidence falls within this zone of
reasonable disagreement. City of Keller, 168 S.W.3d at 822.

 In conducting a factual sufficiency review, we must consider, weigh, and
examine all of the evidence that supports or contradicts the jury's determination.
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); London v.
London, 192 S.W.3d 6, 14-15 (Tex. App.--Houston [14th Dist.] 2005, pet. denied). 
We may set aside the verdict only if the evidence that supports the jury's finding is
so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Steinberg v. Comm'n for
Lawyer Discipline, 180 S.W.3d 352, 355 (Tex. App.--Dallas 2005, no pet.); Nip v.
Checkpoint Sys., Inc., 154 S.W.3d 767, 769 (Tex. App.--Houston [14th Dist.] 2004,
no pet.).

Usury

 The essential elements of a usurious transaction are "(1) a loan of money, (2)
an absolute obligation to repay the principal, and (3) the exaction of a greater
compensation than allowed by law for the use of the money by the borrower." 
Anglo-Dutch Petroleum Int'l, Inc. v. Haskell, 193 S.W.3d 87, 96 (Tex.
App.--Houston [1st Dist.] 2006, pet. denied). "Usury statutes are penal in nature
and should be strictly construed." Id. "The purpose of the usury statute is to penalize
those who intentionally charge an interest in excess of that allowed by law." Pentico
v. Mad-Wayler, Inc., 964 S.W.2d 708, 714 (Tex. App.--Corpus Christi 1998, pet.
denied). "When construing a contract under a usury claim, courts presume the parties
intended a nonusurious contract." Anglo-Dutch Petroleum Int'l, Inc., 193 S.W.3d at
96.

Contracting for Usurious Interest

 In their sixth and seventh points of error, the Parr defendants argue that the trial
court erred in entering the judgment in the amount of $238,178.46 against Ken for
contracting for usurious interest in violation of section 305.001 because the evidence
is legally and factually insufficient to support the judgment as the two notes are not
usurious on their face and contain usury savings clauses. The Parr defendants assert
that, in light of the fact that the usury claims arise from Ken's receipt of fees and
commissions, this case should be considered "a charging or receiving case." 
Alternatively, the Parr defendants assert that the amount of interest contracted for was
not properly "spread" and that the interest should have been spread through the date
of the foreclosure sale rather than the date of the loans' original maturity. They
suggest, thus, that the award should be reduced to $87,773.76.

 The Parr defendants dispute only the sufficiency of the evidence to support the
third element, i.e., the exaction of usurious interest. The Finance Code defines
"interest" as "compensation for the use, forbearance, or detention of money" and
"usurious interest" as "interest that exceeds the applicable maximum amount allowed
by law." Tex. Fin. Code Ann. § 301.002(a)(4), (17) (Vernon 2006). The parties
agree that 18% was the maximum interest rate allowed by law, and the jury was
instructed that "the rate of 18% is the maximum rate allowed by law." See id.
§ 303.009 (Vernon 2006).

 The Finance Code provides various penalties and remedies for contracting for,
charging, or receiving usurious interest. See id. §§ 305.001-.105 (Vernon 2006). 
The version of section 305.001 in effect at the time of trial stated,

(a) A creditor who contracts for, charges, or receives interest that is
greater than the amount authorized by this subtitle is liable to the
obligor for an amount that is equal to the greater of:


 (1) three times the amount computed by subtracting the amount
of interest allowed by law from the total amount of interest
contracted for, charged, or received; or


 (2) $2,000 or 20 percent of the amount of the principal,
whichever is less.

 

Act of April 23, 1999, 76th Leg., R.S., ch. 62, § 7.18, sec. 305.001, 1999 Tex. Gen.
Laws 127, 233 (amended 2005) (current version at Tex. Fin. Code Ann. § 305.001
(Vernon Supp. 2006)) [hereinafter referred to as former section 305.001]. (2) 

 Here, the jury found that Ken requested and received the proceeds from the
checks "as a condition to making the loans," and Ken has not challenged the
sufficiency of evidence to support this finding. In regard to the first loan, Jay Dale,
a certified public accountant, explained that, using the $156,000 actually received by
Fiesta as the "true principal" of that loan, which Dale derived after subtracting the
front-end payments to Ken from the $174,000 face value of the first note, the amount
of interest that would have accrued over the stated term of the first loan on the true
principal, from December 30, 1999 to December 30, 2004, calculated at the stated and
maximum lawful interest rate of 18%, would have been $123,663.81. See Jordan v.
Aston, 798 S.W.2d 17, 19-20 (Tex. App.--Houston [1st Dist.] 1990, no writ) ("The
true principal, the amount upon which a transaction is tested for usury, is the actual
amount of which the borrower had the use, detention, or forbearance."). (3) Dale further
explained that using the $174,000 face value of the principal of the first loan, the
amount of interest that would have accrued over the stated term of the loan on the
face amount, calculated at the stated interest rate of 18%, would have been
$167,642.12. As further noted in exhibits presented into evidence and as explained
in Dale's testimony, the difference between the interest contracted for based on the
face amount of principal of the first note and the interest calculated based on the true
principal of the note was $43,978.31. Dale testified that when the true principal of
$156,000 is used as the actual value of the loan, the effective interest rate spread over
the full term of the loan was 23.85%.

 In regard to the second loan, Dale testified that using the $91,260 actually
received by Fiesta as the "true principal" of that loan, which Dale derived after
subtracting the front-end payments to Ken from the $101,400 face value of the
principal of the second note, the amount of interest that would have accrued over the
stated term of the loan on the true principal, from February 3, 2000 to February 3,
2007, calculated at the stated lawful maximum interest rate of 18%, would have been
$93,287.84. Dale explained that using the $101,400 face amount of the principal of
the second note, the amount of interest that would have accrued over the stated term
of the loan on the face amount, calculated at the interest rate of 18%, would have
been $128,702.71. As noted in exhibits presented into evidence and as explained in
Dale's testimony, the difference between the interest contracted for based on the face
value of the principal of the second note and the interest calculated based on the true
principal of that note was $35,414.87. Dale testified that when the true principal of
$91,260 is used as the actual value of the loan, the effective interest rate spread over
the full term of the loan was 22.88%.

 We hold, based on the finding that Ken requested and received the proceeds
from the four checks that Rocha endorsed over to him "as a condition to making the
loans" and the above evidence, including Dale's testimony that the effective interest
rates on both loans exceeded 18% and Dale's calculations and exhibits, that the
evidence is both legally and factually sufficient to support the trial court's final
judgment of $238,178.46 against Ken for contracting for usurious interest in violation
of section 305.001(a)(1). The trial court made this award pursuant to section 305.001
by multiplying, by three times, the difference between the total amount of interest
actually contracted for on both loans and the amount of interest allowed by law. See
former section 305.001(a)(1). Accordingly, we further hold that the trial court did not
err in entering judgment against Ken in the amount of $238,178.46.

 The Parr defendants argue that because the notes are non-usurious on their
face, the evidence supporting this penalty is legally or factually insufficient. 
However, the Texas Supreme Court has indicated that when an otherwise non-usurious note is accompanied by a condition to pay a fee or commission that
effectively reduces the net amount of money actually loaned, usury may result. See
First State Bank of Bedford v. Miller, 563 S.W.2d 572, 575 (Tex. 1978); Nevels v.
Harris, 129 Tex. 190, 196, 102 S.W.2d 1046, 1049 (1937). 

 In Miller, a lender agreed to loan $70,000, conditioned on the borrower's
agreement to leave $14,000 of the loan proceeds in a non-interest bearing account
"under escrow or freeze" to cover the first two years' interest payments. 563 S.W.2d
at 573. Although the condition apparently was not contained in the note itself, it was
reflected in the loan work sheet and was supported by other evidence. Id. The
supreme court recognized that "[i]f the true principal sum of the loan had been
$70,000, the [] interest charge would not have been usurious." Id. at 575. However,
the court recited the "well established rule" that "the test for usury [should] be applied
to the net amount of money of which the borrower had use, detention or forbearance." 
Id. The court further stated, "in cash loan transactions from which the lender deducts
interest, fees, commissions or other front-end charges, the amount of dollars actually
received or retained by the borrower is held to be the 'true' principal" and that "[i]n
such cases the amount of the stated principal is reduced accordingly in testing for
usury." Id. (citation omitted); see also Gibson v. Drew Mortg. Co., 696 S.W.2d 211,
212-13 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.). The supreme court
calculated the difference between the maximum lawful yield on the face value of the
loan and the yield on the true principal and affirmed an award of usury penalties
against the lender for "contracting for" and "charging" usurious interest. Miller, 563
S.W.2d at 575. Similarly, in Nevels, the stated amount of a note was $6,400, but the
lender withheld $320 as a fee for making the loan. 129 Tex. at 196, 102 S.W.2d at
1049. The supreme court considered the "actual principal" of the loan of $6,080 in
determining whether the interest charged was usurious. 129 Tex. at 196-97, 102
S.W.2d at 1049. 

 As in Miller and Nevels, although the notes in the instant case were non-usurious on their face, Fiesta presented evidence that the loans were conditioned on
the immediate payment of a fee of approximately 10% of the face amount of both
loans, thus effectively reducing the true principal of the loans and increasing the
effective interest rate above the maximum lawful rate of 18%, and resulting in a
contract for usurious interest. In support of their argument that the notes here are not
usurious on their face, the Parr defendants rely on Windhorst v. Adcock Pipe &
Supply, 547 S.W.2d 260 (Tex. 1977), and Stacks v. E. Dallas Clinic, 409 S.W.2d 842
(Tex. 1966). However, Windhorst and Stacks do not support the Parr defendants'
argument because neither case addresses the payment of a commission or a fee as a
condition to a loan similar to the payments made in this case. Miller also flatly
contradicts the Parr defendants' argument that the "contracting for" claim against Ken
should be "referred to as a charging or receiving case," because, in that case, the
lender was held liable for contracting for usurious interest based on the lender's
condition to freeze a portion of the face amount of the note. 563 S.W.2d at 575. 

 Also, in regard to the Parr defendants' argument that the savings clauses in the
notes preclude the award of damages against Ken for "contracting for" usurious
interest, (4) we note that Texas courts "have acknowledged the validity of usury savings
clauses and, in appropriate circumstances, enforced such clauses to defeat a violation
of the usury laws." See Armstrong v. Steppes Apartments, Ltd., 57 S.W.3d 37, 46
(Tex. App.--Fort Worth 2001, pet. denied). However, the mere presence of a usury
savings clause "will not rescue a transaction that is necessarily usurious by its explicit
terms." Id.; see also Kaplan v. Tiffany Dev. Corp., 69 S.W.3d 212, 220 (Tex.
App.--Corpus Christi 2001, no pet.). This rule prevents a creditor from freely
contracting for usurious interest knowing that for the few debtors who complain, the
creditor will escape penalty by mere reference to a savings clause and refund of the
usurious amounts. Kaplan, 69 S.W.3d at 220. Furthermore, the effect of a usury
savings clause is largely a question of construing the terms of the clause as a whole
and in light of the circumstances surrounding the transaction. Armstrong, 57 S.W.3d
at 46. 

 Based on these guidelines, we conclude that the savings clauses in the notes do
not preclude judgment against Ken. First, although the notes are not usurious on their
face, Fiesta presented evidence that its payment of fees to Ken was contemporaneous
with the parties' execution of the notes, and the jury found that Ken conditioned the
loans on the payment of these fees. Fiesta also presented evidence that the checks
were signed on the date of the closings, were endorsed by Rocha, and were negotiated
or presented by Ken shortly thereafter at his personal bank, as demonstrated by Ken's
bank account numbers appearing on the checks. Furthermore, in considering the
surrounding circumstances, we note that Fiesta presented evidence suggesting that
Ken structured the transactions with an intent to avoid reporting the payments. See
id. at 47 (stating that lender cannot avoid consequences of contracting for usurious
interest rate simply by including savings clause in contract). Additionally, there is
no evidence that Ken or the Partnership ever attempted to effectuate the savings
clauses, and they cannot now seek the clauses' protection in this appeal. Id. 

 Finally, Ken argues that the amount of interest contracted for was wrongly
"spread over the entire term of the loan" instead of spread through the date of the
foreclosure sale. Section 302.101 provides,

(a) To determine whether a loan secured in any part by an interest in
real property, including a lien, mortgage, or security interest, is
usurious, the interest rate is computed by amortizing or spreading,
using the actuarial method during the stated term of the loan, all
interest at any time contracted for, charged, or received in
connection with the loan.


(b) If a loan described by Subsection (a) is paid in full before the end
of the stated term of the loan and the amount of interest received
for the period that the loan exists exceeds the amount that
produces the maximum rate authorized by law for that period, the
lender shall:


 (1) refund the amount of the excess to the borrower; or


 (2) credit the amount of the excess against amounts
owing under the loan.


(c) A lender who complies with Subsection (b) is not subject to any
of the penalties provided by law for contracting for, charging, or
receiving interest in excess of the maximum rate authorized.


Tex. Fin. Code Ann. § 302.101 (Vernon 2006).

 Section 302.101 plainly states that interest should be spread throughout the
"stated term of the loan." Id. The claim against Ken arises from the allegation that
he "contracted for" usurious interest. Thus, Fiesta presented evidence properly
spreading the interest under the stated term of the loans, as those terms existed at the
time Ken engaged in the penalized conduct, i.e., at the time he contracted for the
loans. We see no reason, and we have discovered no authority, to suggest that, in a
contracting claim, it would be proper, to perform a spreading analysis through the
date of a foreclosure sale. That simply is neither what Ken "contracted for," nor what
the language in section 305.001 penalizes.

 We overrule the Parr defendants' sixth and seventh points of error. 


Charging and Receiving Usurious Interest


 In their first and eighth points of error, the Parr defendants contend that the
evidence is legally and factually insufficient to support the jury's findings that the
Partnership and Ken and Corine, as general partners, contracted for, charged, or
received usurious interest. (5) In their second and third points of error, the Parr
defendants argue that the trial court erred in entering judgment of $92,245.23 against
the Partnership and Ken and Corine for charging usurious interest in violation of
section 305.001 because the evidence is legally and factually insufficient to support
the judgment. (6) In their fourth and fifth points of error, the Parr defendants contend
that the trial court erred in entering the judgment of $101,400 against the Partnership
and Ken and Corine for charging and receiving usurious interest in violation of
section 305.002 because the evidence is legally and factually insufficient to support
the judgment. (7) 

 Throughout these points of error, the Parr defendants argue that there is no
evidence or insufficient evidence that the Partnership charged or received usurious
interest because Dale, the certified public accountant who presented Fiesta's sole
calculations and evidence on the amount of interest charged and received by the Parr
defendants, included in his calculations the interest charged and received by Ken
before the loans were assigned to the Partnership and failed to distinguish between
the interest charged and received by Ken and the Partnership. The Parr defendants
assert that there is no evidence that the Partnership "received any benefit" from the
payments made to Ken before the assignment. They also assert that Dale should also
have made a charging calculation by spreading interest "through the foreclosure of
May 1, 2001," rather than through the date of acceleration.

 As noted above, the version of section 305.001 in effect at the time of trial
stated, in relevant part, that "[a] creditor who contracts for, charges, or receives
interest that is greater than the amount authorized by this subtitle is liable to the
obligor for an amount that is equal to the greater of: (1) three times the amount
computed by subtracting the amount of interest allowed by law from the total amount
of interest contracted for, charged, or received; or (2) $2,000 or 20 percent of the
amount of the principal, whichever is less." See former section 305.001. Section
305.002 provides, 

(a) In addition to the amount determined under Section 305.001, a
creditor who charges and receives interest that is greater than
twice the amount authorized by this subtitle is liable to the
obligor for: 


 (1) the principal amount on which the interest is charged and
received; and 


 (2) the interest and all other amounts charged and received. 


Tex. Fin. Code Ann. § 305.002 (Vernon Supp. 2006). 

 In regard to the first loan, Dale testified, supported by exhibits introduced into
evidence, that the total amount of interest that had been charged from December 30,
1999 to December 11, 2000, the date of acceleration, based on the full face amount
of the principal of the loan, was $47,475.67. Dale explained that the amount of
interest that could have been charged at 18% based on the true principal of $156,000
was $27,880.29. The difference between the amount of interest charged during the
term of the loan and the maximum amount that would have been authorized by law
was $19,595.38. Dale stated that the amount of interest charged on the loan, when
applied to the true principal and when spread over the term of the loan, created an
effective interest rate of 35.4%.

 In regard to the second loan, Dale testified, supported by exhibits introduced
into evidence, that the total amount of interest that had been charged from February
3, 2000 to December 11, 2000, the date of acceleration, based on the full face amount
of the principal of the loan, was $25,661.61. Dale explained that the amount of
interest that could have been charged at 18% based on the true principal of $91,260
was $14,513.58. The difference between the amount of interest charged during this
period and the maximum amount authorized by law was $11,153.03. Dale stated that
the amount of interest actually charged on the loan, when applied to the true principal
and when spread over the term of the loan, created an effective interest rate of
36.59%.

 Based on the unchallenged finding that the loans were accelerated on
December 11, 2000, and the other evidence presented by Fiesta, including Dale's
testimony that the effective interest rates on the true principal of both loans exceeded
18%, as well as Dale's calculations detailed above, the trial court signed a final
judgment awarding Fiesta, under section 305.001(a)(1), $92,245.23 for the
Partnership's charging of usurious interest. The trial court arrived at this award by
applying the penalty provisions in section 305.001 and multiplying, by three times,
$30,748.41, which, as Dale testified, is the difference between the total amount of
interest actually charged on the loans and the amount of interest allowed by law. See
former section 305.001. Furthermore, based on Dale's testimony that the effective
interest rate for the second loan was 36.59%, more than twice the amount allowed by
law, the trial court also awarded Fiesta, under section 305.002, $101,400, for the
Partnership's charging and receiving usurious interest. The trial court arrived at this
figure by awarding Fiesta the full face value of the principal of the second loan. See
Tex. Fin. Code Ann. § 305.002.

 Assignment of the Loans

 In Texas, an assignee of a note may be liable for statutory penalties for usury
if it is shown that the assignee has knowledge or notice that the interest received and
collected was usurious. Fires v. Kinney-Shotts Inv. Co., 59 S.W.2d 827, 827 (Tex.
Comm'n App. 1933, holding approved); N. Am. Acceptance Corp. v. Warren, 451
S.W.2d 921, 925 (Tex. Civ. App.--Dallas 1970, writ ref'd n.r.e.); Mossler
Acceptance Co. v. Fields, 241 S.W.2d 255, 256 (Tex. Civ. App.--Fort Worth 1951,
no writ). Thus, to the extent that the Partnership argues that it cannot be held liable
for charging or receiving usurious interest because it was merely an assignee of the
notes, the argument fails. Here, Fiesta presented evidence and the jury found that
Ken required the front-end payments as a condition to making both loans. Based on
the undisputed evidence that Ken and Corine were the general partners of the
Partnership, we conclude that Fiesta presented sufficient evidence that the Partnership
was on notice and had knowledge that Ken required the front-end payments as a
condition of the loans, the true principal of the loans was less than the amount stated
on the face of the notes, the stated interest rate of 18% was not accurate, and the
actual interest rate was substantially higher than the stated, maximum lawful rate. 
Holding otherwise would create an opportunity, even when it is clear, as it is here,
that the assignee had knowledge and notice of the usurious nature of the loans at the
time of assignment, to evade statutory usury penalties by attempting to assign away
liability for those penalties. (8) Accordingly, we hold that the evidence is legally and
factually sufficient to support an implied finding that the Partnership had notice and
knowledge that it was charging and receiving usurious interest by charging and
receiving interest on the full face amount of the notes rather than the true principal
of the loans. 

 We overrule the remaining portion of the Parr defendants' first and eighth
points of error. 

 Amount of Interest Charged and Received

 In considering the evidence regarding the amount of the interest charged and
received, we note that "contracts are tested for usury by spreading the interest over
the entire term of the contract." Armstrong, 57 S.W.3d at 47 (citing Tanner Dev. Co.
v. Ferguson, 561 S.W.2d 777, 786 (Tex. 1977)); see also Tex. Fin. Code Ann.
§ 302.101(a) (Vernon 2006) (stating that "interest rate is computed by amortizing or
spreading, using the actuarial method during the stated term of the loan, all interest
at any time contracted for, charged, or received in connection with the loan"). This
is because usury penalties cannot be imposed simply because a loan's interest rate
exceeds the statutory limit in a particular year. Pentico, 964 S.W.2d at 714 (citing
Tanner Dev. Co., 561 S.W.2d at 787); see also Groseclose v. Rum, 860 S.W.2d 554,
557 (Tex. App.--Dallas 1993, no writ). 

 Texas courts have defined "spreading" as "a method of allocating over the life
of a loan (or a portion of the loan, in the event the loan maturity is accelerated or the
loan is prepaid) charges that the parties themselves have called interest or that a court
would deem interest regardless of the label given the charge by the parties." 
Armstrong, 57 S.W.3d at 47-48 (citations omitted); see also Coppedge v. Colonial
Sav. & Loan Ass'n, 721 S.W.2d 933, 937 (Tex. App.--Dallas 1986, writ ref'd n.r.e.)
("When prepayment is made, the interest received is spread over the term during
which the borrower actually had use of the funds; the lender must refund or credit any
excess interest to the borrower to avoid the statutory penalties."); Mims v. Fidelity
Funding, Inc., 307 B.R. 849, 859 (N.D. Tex. 2002) (stating that spreading analysis
should be performed by comparing maximum amount of interest for which creditor
is entitled to lawfully contract, charge, or receive through the acceleration date with
total amount of interest actually charged).

 Using this analysis, Dale testified that the effective interest rate for the first
loan was 35.4% and that the effective interest rate on the second loan was 36.59%. 
The Partnership responds that the evidence supporting Dale's calculations is legally
insufficient because he used an improper loan term and failed to account for the
interest charged and received by Ken prior to the assignment. 

 We hold that the evidence supporting the amounts of the charging and
receiving penalties is legally insufficient. Here, both notes were assigned to the
Partnership on April 18, 2000, after Fiesta had made multiple payments to Ken on
both notes. These pre-assignment payments, which were both charged and received
by Ken, contained, pursuant to the terms of the loans, both a principal and an interest
component. However, Fiesta failed to present any evidence of the specific amounts
of interest charged and received by Ken and the Partnership respectively both before
and after the assignment. Fiesta also failed to present evidence on the amounts of
interest both creditors legally could have charged and received respectively. Section
305.001 imposes a penalty upon each creditor who charges usurious interest on a
loan. See former section 305.001(a). Thus, the amount of the penalty to be imposed
against each creditor who charges usurious interest on a loan, under the plain terms
of the statute, is dependent upon the amount of interest each creditor actually charges
and receives. See id. The amount of interest actually charged and received by each
creditor is therefore critical to the calculation of the appropriate amount of the
penalties to be imposed on the violating creditor. See id. 

 As the judgment currently stands, the penalty imposed against the Partnership
(and its general partners) for charging usurious interest in violation of section
305.001(a) is calculated based on the full amount of interest charged over the life of
the loans by multiple creditors; it does not in any way account for the fact that Ken
also charged interest on the loans. Without evidence attributing the amount of
interest charged by Ken, there is no evidence under which the trial court could have
calculated the appropriate penalty to impose against the Partnership for charging
usurious interest in violation of section 305.001. See Hurley v. Nat'l Bank of
Commerce, 529 S.W.2d 788, 789-91 (Tex. Civ. App.--Dallas 1975, writ ref'd n.r.e.)
(noting that maker of allegedly usurious note had assigned note, after date of
assignment all payments were made to assignee, and debtor's claim for usury against
assignor of note would be limited to interest paid to assignor before date of
assignment). 

 Similarly, the evidence is also legally insufficient to support the trial court's
penalty for the Partnership's charging and receiving usurious interest more than twice
the amount allowed by law under section 305.002. As noted above, Dale included
in his calculations the amounts of interest charged and received by Ken before the
assignment as well as the amounts of interest charged and received by the Partnership
after the assignment. In regard to this penalty, Dale failed to distinguish the amount
of principal on which both Ken and the Partnership charged and received the usurious
interest in violation of section 305.002. As with section 305.001, we conclude that
section 305.002 imposes a penalty against each creditor who charges or receives
interest more than twice the amount allowed by law. See Tex. Fin. Code Ann. §
305.002. Although, under Dale's analysis, Fiesta would have been entitled to recover
from the offending creditors an amount equal to the underlying principal of the
second loan on which the usurious interest was charged and received ($91,260), (9) the
amount of principal on which Ken and the Partnership respectively charged and
received the interest is critical to the calculation of the amount of the appropriate
penalty to be imposed against each creditor under section 305.002. Id. §
305.002(a)(1). Without this evidence, there is no basis under which the trial court
could have calculated the appropriate penalty to impose against the Partnership under
section 305.002. (10) 

 Fiesta argues that the above analysis is flawed because "[Ken] did not receive
any usurious interest prior to the assignment." Fiesta asserts that "for the purpose of
determining usury [1] the front end payments must be applied to the principal and [2]
the subsequent payments made to [Ken] must be applied first to accrued interest at
18% and then to principal." (11) Fiesta's argument ignores the reality of the situation. 
In accordance with the terms of the notes, Fiesta's front-end payments reduced the
true principal of the loans. Thereafter, Fiesta made its monthly payments pursuant
to the terms of the note to the note holder, first to Ken and then, after assignment, the
Partnership, and each of these payments included components of principal and
interest. This reduction in principal caused by the front-end payments increased the
stated interest rate of 18% to an effective interest rate well above that authorized by
law. Thus, both Ken's and the Partnership's subsequent charging and receiving of
interest violated the usury laws. Fiesta has failed to clearly explain how only the
Partnership would be liable under a charging or receiving theory and how Ken, as a
creditor who individually charged and received interest under the notes, would not
be liable in an individual capacity for at least a portion of the charging and receiving
penalties. Regardless, evidence of the amount of interest charged and received by
Ken, and the underlying amount of principal on which the interest was charged and
received, is necessary to calculate the appropriate penalties to impose against the
Partnership. 

 Accordingly, we further hold that the trial court erred in entering the judgment 
of $92,245.23 against the Partnership and Ken and Corine for charging usurious
interest in violation of section 305.001 and in entering the judgment of $101,400
against the Partnership and Ken and Corine for charging and receiving usurious
interest in violation of section 305.002.

 We sustain the Parr defendants' second, third, fourth, and fifth points of error.Appellate Attorneys' Fees

 In their ninth point of error, the Parr defendants contend that the evidence is
legally and factually insufficient to support the conditional award of appellate
attorneys' fees to Fiesta. Fiesta counters that section 305.005 of the Finance Code
"requires the court to set and award attorneys' fees."

 Tom Bray, Fiesta's attorney, testified as to the number of hours that he
expended on the case, his qualifications, and his hourly rate. The Parr defendants
ultimately stipulated that the amount of $44,000 was a fair and reasonable amount of
attorneys' fees for Fiesta's prosecution of the case. However, there was no stipulation
regarding Fiesta's anticipated appellate attorneys' fees, and Fiesta did not offer any
testimony regarding its appellate attorneys' fees. Yet, in its final judgment, in
addition to the award for the stipulated attorneys' fees for trial, the trial court also
awarded Fiesta's reasonable attorneys' fees in the amount of $30,000 in the event that
the Parr defendants unsuccessfully appeal, in whole or in part, to the Texas Court of
Appeals; $10,000 in the event that the Parr defendants unsuccessfully appeal to the
Supreme Court of Texas and their petition for review is denied; and $20,000 in the
event that the Parr defendants unsuccessfully appeal to the Supreme Court of Texas
and their petition for review is granted. 

 Section 305.005 provides that "[a] creditor who is liable under Section 305.001
or 305.003 is also liable to the obligor for reasonable attorney's fees set by the court." 
Tex. Fin. Code Ann. § 305.005 (Vernon Supp. 2006). Although no court has yet
addressed the standard or method of proving attorneys' fees under section 305.005,
we note that, generally, the party seeking to recover attorneys' fees carries the burden
of proof. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). 
Furthermore, it is well settled that the trial court's award of attorneys' fees may
include appellate attorneys' fees. Keith v. Keith, 221 S.W.3d 156, 169 (Tex.
App.--Houston [1st Dist.] 2006, no pet. h.). Thus, we conclude that section 305.005
permits a court to award appellate attorneys' fees. 

 However, there must be evidence of the reasonableness of fees for appellate
work to support the award of appellate attorneys' fees. Siegler v. Williams, 658
S.W.2d 236, 241 (Tex. App.--Houston [1st Dist.] 1983, no writ); Jones v. Am.
Airlines, Inc., 131 S.W.3d 261, 271 (Tex. App.--Fort Worth 2004, no pet.); see also
Woollett v. Matyastik, 23 S.W.3d 48, 53 (Tex. App.--Austin 2000, pet. denied) ("A
court does not have authority to adjudicate the reasonableness of attorneys' fees on
judicial knowledge without the benefit of evidence."). Here, there is no evidence to
support the award of Fiesta's reasonable appellate attorneys' fees. Accordingly, we
hold that the evidence is legally insufficient to support the trial court's conditional
award of appellate attorneys' fees to Fiesta.

 Fiesta argues that the trial court was permitted to take judicial notice of the
usual and customary attorneys' fees and of the contents of the case file without
receiving further evidence, relying on Superior Ironworks, Inc. v. Roll Form Prods.,
Inc., 789 S.W.2d 430, 431 (Tex. App.--Houston [1st Dist.] 1990, no writ). However,
the award of attorneys' fees in Superior Ironworks, Inc. was predicated on section
38.001 of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem.
Code Ann. § 38.001 (Vernon 1997) ("A person may recover reasonable attorney's
fees from an individual or corporation, in addition to the amount of a valid claim and
costs, if the claim is for: (1) rendered services; (2) performed labor; (3) furnished
material; (4) freight or express overcharges; (5) lost or damaged freight or express;
(6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract."). 
As the Superior Ironworks court noted, section 38.004 specifically authorizes a trial
court to take judicial notice of the usual and customary attorneys' fees and of the
contents of the case file without receiving further evidence in certain circumstances. 
789 S.W.2d at 431. However, the award of appellate attorneys' fees in this case is
predicated on section 305.005 of the Finance Code, not section 38.001 of the Civil
Practice and Remedies Code. This court has previously held that section 38.004
cannot be used to justify the reasonableness of attorneys' fees recovered outside of
section 38.001. See Valdez v. Valdez, 930 S.W.2d 725, 732-33 (Tex. App.--Houston
[1st Dist.] 1996, no writ); see also London v. London, 94 S.W.3d 139, 147-49 (Tex.
App.--Houston [14th Dist.] 2002, no pet.) (holding that trial courts may not use
section 38.004 to take judicial notice of reasonableness of attorneys' fees awarded
under statute other than section 38.001).

 We sustain the Parr defendants' ninth point of error.

Wrongful Foreclosure

 In its first cross-issue, Fiesta argues that because its wrongful foreclosure claim
was a separate cause of action for actual compensatory damages, the claim was not
cumulative of its claim for usury penalties. In its second cross-issue, Fiesta argues
that the trial court erred in dismissing its wrongful foreclosure claim without first
giving it the opportunity to amend its pleadings. The Parr defendants counter that
Fiesta waived its right to assert its wrongful foreclosure claim and, alternatively, that
Fiesta's wrongful foreclosure claim "was not a separate cause of action for actual
damages" and "was precluded by section 305.007 of the Finance Code."

 Fiesta alleged in its petition that the Parr defendants contracted for, charged,
and received usurious interest and that the Parr defendants' foreclosure of its
properties was wrongful. In its wrongful foreclosure claim, Fiesta sought to set aside,
cancel, and declare void the deeds obtained as a result of the foreclosure and also
sought a declaration that Fiesta was the owner of the properties. Fiesta also sought
compensatory damages for "lost rents and profits during the periods for which [it]
was wrongfully denied possession" of the properties and, in the alternative, damages
"for the fair market value of [its] equity interest" in the properties. 

 Before trial, the Parr defendants filed a "motion to dismiss [Fiesta's] claims and
damages relating to wrongful foreclosure," asserting that section 305.007 of the
Finance Code prohibited Fiesta from seeking "to recover common law damages for
violation of the Texas usury laws." Although the record does not contain a separate
order granting the Parr defendants' motion to dismiss, the trial court recited in its
final judgment that "[p]rior to receiving evidence" it had considered and granted the
Parr defendants' motion to dismiss Fiesta's wrongful foreclosure claim and had
excluded "all evidence relating thereto."

 We first address the Parr defendants' argument that Fiesta waived its right to
assert its wrongful foreclosure claim. The Parr defendants assert that "the trial court
did not rule on the motion before or during trial," Fiesta failed to object to the Parr
defendants' motion to dismiss, and "there is no record that the court made any ruling
before or during the trial." 

 The record indicates that after being served with the Parr defendants' motion
to dismiss on the first day of trial, Fiesta requested additional time to respond to the
motion. The trial court agreed to Fiesta's request, and Fiesta further agreed not to
mention the issue during voir dire. The only other reference to Fiesta's wrongful
foreclosure claim is contained in the final judgment, and there is no testimony in the
record showing that the motion to dismiss was again discussed before the
presentation of evidence. However, the final judgment plainly states that the trial
court considered and granted the Parr defendants' motion to dismiss prior to receiving
evidence and, thereby, excluded all evidence relating to the wrongful foreclosure
claim. Thus, the Parr defendants' argument that Fiesta "voluntarily waived this claim
by not presenting any argument or evidence" is directly contradicted by the final
judgment's recitation regarding that claim. To the extent that the Parr defendants are
suggesting that the final judgment was incorrect in this regard, the Parr defendants
have failed to identify any post-judgment motion in which they informed the court of
this alleged error. We hold that Fiesta did not waive its right to assert its wrongful
foreclosure claim. 

 In regard to the merits of the Parr defendants' motion to dismiss Fiesta's
wrongful foreclosure claim, the motion was based solely on section 305.007 of the
Finance Code, which provides,

The penalties provided by this chapter are the only penalties for
violation of this subtitle for contracting for, charging, or receiving
interest in an amount that produces a rate in excess of the maximum rate
allowed by law. Common law penalties do not apply.


Tex. Fin. Code Ann. § 305.007 (Vernon Supp. 2006). The Parr defendants argue that
because Fiesta's wrongful foreclosure claim "is clearly an attempt to recover common
law damages for violation of the Texas usury laws" and "there is no other factual
basis for this claim," section 305.007 bars the claim. 

 For a sale under a deed of trust to be valid, the terms set out in the deed of trust
must be strictly followed. Univ. Sav. Ass'n v. Springwoods Shopping Ctr., 644
S.W.2d 705, 706 (Tex. 1982); see also League City State Bank v. Mares, 427 S.W.2d
336, 340 (Tex. Civ. App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.) (stating that
foreclosure was wrongful because plaintiffs were current in payment on note at date
of attempted acceleration and foreclosure). Failure to properly foreclose on property
gives rise to a cause of action for either the return of the property or damages. 
UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc., 176 S.W.3d 595, 610 (Tex.
App.--Corpus Christi 2005, pet. denied) (citing Univ. Sav. Ass'n, 644 S.W.2d at
706). The correct measure of damages is the difference between the value of the
property in question at the date of foreclosure and the remaining balance due on the
indebtedness. Farrell v. Hunt, 714 S.W.2d 298, 299 (Tex. 1986); Charter Nat'l
Bank-Houston v. Stevens, 781 S.W.2d 368, 375 (Tex. App.--Houston [14th Dist.]
1989, writ denied). 

 The Parr defendants do not refer us to any authority for the proposition that
section 305.007 bars a claim for wrongful foreclosure. A plain reading of the section
reveals that only common law "penalties" are barred, not common law claims for
actual damages. Tex. Fin. Code Ann. § 305.007. In its wrongful foreclosure claim,
Fiesta sought a declaration that it was the owner of the properties or, in the
alternative, compensatory damages for lost rents and profits or damages related to its
equity interest. Section 305.007 expressly bars only "common law penalties" for
usury. Id. Here, Fiesta's claim for wrongful foreclosure is not a common law penalty
precluded by section 305.007, but is rather an alternative cause of action with
different remedies. 

 Furthermore, a review of the types of claims that section 305.007 has been held
to preclude indicate that a claim for wrongful foreclosure would not fall within the
scope of the statute. For example, in Nolen v. Nucentrix Broadband Networks Inc., 
the United States Court of Appeals for the Fifth Circuit stated that a plaintiff's unjust
enrichment claim for restitution of usurious late fees was precluded by section
305.007 because "restitution for unjust enrichment" was a "common law penalty"
expressly prohibited by the statute. See 293 F.3d 926, 928 n.1 (5th Cir. 2002); see
also Gallardo v. TCI Cablevision of Tex., Inc., No. 13-02-460-CV, 2004 WL
1932662, at *3 (Tex. App.--Corpus Christi Aug. 31, 2004, no pet.) (mem. op.)
(finding section 305.007 precluded action seeking declaration that penalty clauses
were unenforceable and late fees should be returned). 

 Accordingly, we hold that the trial court erred in granting the Parr defendants'
motion to dismiss Fiesta's wrongful foreclosure claim on the sole ground that section
305.007 barred the claim. 

 We sustain Fiesta's first cross-issue. (12)

Post-Judgment Interest

 In its third cross-issue, Fiesta argues that the trial court erred in entering the
post-judgment rate of interest at 5% because by the time the judgment was signed "it
had increased to 6.25%." See Tex. Fin. Code Ann. § 304.003 (Vernon 2006). Fiesta
asserts that although the change in the interest rate was "called to the [c]ourt's
attention and [it] agreed to change it," the court "inadvertently failed to modify the
proposed judgment" to reflect the higher rate.

 Fiesta concedes in its briefing that "there is no record that the trial court agreed
to change the interest rate," but Fiesta believes that the Parr defendants' counsel
would agree that the trial court intended "to substitute the new rate." However, in
their briefing, the Parr defendants do not stipulate that the trial court intended to
award Fiesta a higher post-judgment interest rate or that Fiesta timely and specifically
called any such error to the attention of the trial court. 

 To present a complaint for appellate review, the record must show: (a) the
complaint was presented to the trial court by a timely request, objection, or motion
stating the specific grounds for the desired ruling if the specific grounds are not
apparent from the context; and (b) the trial court ruled on the request. Tex. R. App. 
P. 33.1(a). Furthermore, to preserve a complaint of error in a judgment, a party must
inform the trial court of its objection by a motion to amend or correct the judgment,
a motion for new trial, or some other similar method. See Dal-Chrome Co. v.
Brenntag Sw., Inc., 183 S.W.3d 133, 144-45 (Tex. App.--Dallas 2006, no pet.). 

 As conceded by Fiesta, the record does not support its assertion that it
presented the trial court with any complaint regarding the post-judgment interest rate
included in its judgment. Accordingly, we hold that Fiesta has not preserved this
issue for our review. See Keith, 221 S.W.3d at 173 ("A complaint regarding the
award of post-judgment interest must be preserved in the trial court by a motion to
amend or to correct the judgment or by a motion for new trial.").

 We overrule Fiesta's third cross-issue.

Conclusion


 We reverse the portion of the trial court's judgment awarding Fiesta $92,245.23
from the Partnership, Ken, and Corine for "charging" usurious interest in violation
of section 305.001 of the Texas Finance Code and the portion of the judgment
awarding Fiesta $101,400 from the Partnership, Ken, and Corine for "charging" and
"receiving" usurious interest in violation of section 305.002 of the Texas Finance
Code. We render judgment that Fiesta shall take nothing on its claims againstthe Parr
defendants for "charging" usurious interest in violation of section 305.001 of the
Texas Finance Code and "charging" and "receiving" usurious interest in violation of
section 305.002 of the Texas Finance Code. 

 We further reverse the portion of the trial court's judgment granting Fiesta
conditional appellate attorneys' fees. We further reverse the portion of the judgment
dismissing Fiesta's wrongful foreclosure claim, and we remand the cause for
proceedings consistent with this opinion on Fiesta's wrongful foreclosure claim. 

 We affirm the remainder of the judgment in all other respects, including the
portion of the judgment awarding Fiesta $238,178.46 from Ken for "contracting for"
usurious interest in violation of section 305.001 of the Texas Finance Code. 



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. See Tex. Fin. Code Ann. §§ 305.001, 305.002, 305.005 (Vernon Supp. 2006).
2. The 2005 amendments to section 305.001 became effective September 1, 2005. This
case was tried prior to this effective date; thus, the former version applies.
3. The terms of both notes required crediting the front-end payments to reduce the
principal of the loans. The first note provided, "The Note Holder will use all of my
prepayments to reduce the amount of principal that I owe under this Note." The
second note provided, "Interest will be calculated on the unpaid principal to the date
of each installment period. Payments will be credited first to the accrued interest and
then to reduction of principal." As no interest accrued at closing, the front-end
payments should have reduced the principal.
4. The Parr defendants make reference to the savings-clause defense in a single
sentence, without any discussion of the terms of the notes' savings clauses or their
applicability to the facts of this case. The Parr defendants also do not discuss any
relevant authority regarding the legal effect of the savings clauses. See Tex. R. App.
P. 38.1(h). Accordingly, in responding to the Parr defendants' argument, we address
only the general effect of a savings clause. 
5. Having held, in our consideration of the Parr defendants' sixth and seventh points of
error, that the evidence is both legally and factually sufficient to support the trial
court's final judgment of $238,178.46 against Ken for contracting for usurious
interest in violation of section 305.001(a)(1), we have necessarily disposed of the 
portion of the Parr defendants' first and eighth points of error pertaining to the jury's
findings against Ken. We address the remaining portion of the first and eighth points
of error here.
6. The Parr defendants make two preliminary assertions, which we briefly address. 
First, the Parr defendants assert that section 305.001 does not provide a statutory
penalty for charging usurious interest. However, the version of section 305.001 in
effect at the time of trial applied to a "a creditor who contracts for, charges, or
receives interest that is greater than the amount authorized." See former section
305.001. 


 Second, the Parr defendants complain that there is no evidence or insufficient
evidence to support a finding that the Partnership contracted for usurious interest. 
However, the jury found that the Partnership contracted for, charged, or received
usurious interest" and the trial court imposed liability against the Partnership only for
charging and receiving usurious interest.
7. As we have previously noted, the trial court's "charging" and "receiving" penalties
were imposed against the Partnership and Ken and Corine jointly and severally. 
Although the judgment does not expressly address the issue, it appears that the
penalties were imposed against Ken and Corine in their capacity as general partners
pursuant to the general rule that a partner is liable jointly and severally for all debts
and obligations of the partnership. See Tex. Rev. Civ. Stat. Ann. art. 6132b-3.04
(Vernon Supp. 2006) ("Except as provided by Section 3.07 or 3.08(a), all partners are
liable jointly and severally for all debts and obligations of the partnership unless
otherwise agreed by the claimant or provided by law."). The parties also agree that
these penalties were imposed against Ken and Corine in their capacity as general
partners, as opposed to the "contracting for" penalty, which was imposed against Ken
in his individual capacity. Neither party has challenged the imposition of these
penalties under these partnership principles. Thus, although we recognize the terms
of the final judgment, we will refer to the "charging" and "receiving" penalties as
being imposed against the Partnership. 
8. See Lupo v. Equity Collection Serv., 808 S.W.2d 122, 124 (Tex. App.--Houston [1st
Dist.] 1991, no writ) (rejecting collection agency's argument that since it was not
party to original loan transaction, it could not be held liable for usury statutory
penalties because "[o]therwise, one who was not a party to the original loan
transaction . . . could attempt to collect usurious interest without fear of the penalties
for usury"); Davis v. Boling, 340 S.W.2d 331, 334 (Tex. Civ. App.--Amarillo 1960,
writ ref'd n.r.e.) (stating that burden is on debtor to plead and prove that creditor has
"notice or knowledge of the usury in the transaction" when "there is nothing to show
upon the face of the note that it is a usurious contract" and there is nothing in record
to show creditor "had any notice of any usury"); Hamor v. Commerce Farm Credit
Co., 74 S.W.2d 1035, 1038 (Tex. Civ. App.--Amarillo 1934, writ dism'd) (holding
that to recover statutory penalty for usury against assignee, plaintiff must prove
assignee's knowledge or notice of usurious interest).
9. Additionally, we note that the penalty imposed by the trial court under section
305.002 is problematic because it awards Fiesta the full face amount of the principal
of the second note rather than the true principal of the loan, on which the usury
calculations are based. 
10. The error in the judgment with regard to the charging and receiving penalties is
underscored by the fact that, because the Partnership was not the note holder before
assignment, there is no evidence that the Partnership charged interest before the
assignment and there is no evidence that the Partnership "received" the payments and
the accompanying interest component made before the assignment. See Stacks v. E.
Dallas Clinic, 409 S.W.2d 842, 844 (Tex. 1966). (defining "receiving" to mean
"benefitting" from the interest paid). 
11. See 13 Tex. Jur. 3d Consumer and Borrower Protection § 80 ("The law does not
automatically convert payments of usurious interest into payments of principal but,
rather, merely gives the borrower the right to have them so applied.") (citing Adleson
v. B.F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939 (1935)). Although we have not
found any recent authority directly rejecting the Parr defendants' suggestion that
payments made to Ken should have been applied first to accrued interest at 18% and
then to principal, we note that Texas courts have held that the statute of limitations on
a debtor's usury claim begins to run at the time an allegedly usurious payment is
made. Hurley v. Nat'l Bank of Commerce, 529 S.W.2d 788, 790 (Tex. Civ.
App.--Dallas 1975, writ ref'd n.r.e.) Hurley is relevant to the Parr defendants'
argument because the court rejected the debtor's argument that "no cause of action
for usury arises so long as the aggregate amount of the payments does not exceed the
principal sum originally advanced because the lender may elect to treat all payments
up to that time as return of principal and may forego the interest or reduce it to a
lawful amount." Id. The court further stated, "Such a method of purging usury from
interest payments already made" would not be permitted under the relevant federal
statute or Texas law. Id. Similarly, we can find no authority for the Parr defendants'
suggestion that we should recharacterize all of the payments made to Ken to be lawful
payments of principal and interest so as to insulate Ken from charging and receiving
liability.
12. Having held that the trial court erred in granting the Parr defendants' motion to
dismiss Fiesta's wrongful foreclosure claim on the ground that section 305.007 barred
the claim, we need not address Fiesta's second cross-issue that the trial court erred in
dismissing its wrongful foreclosure claim without first giving it the opportunity to
amend its pleadings.